(No. 67067.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. FARLEY SHUMPERT, Appellee.

*Opinion filed January 18, 1989.*

CALVO, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, Inge Fryklund, Assistant State's Attorney, and Marie Quinlivan Czech, Special Assistant State's Attorney, of counsel), for the People.

David C. Thomas, of Chicago, for appellee.

CHIEF JUSTICE MORAN delivered the opinion of the court:

In the circuit court of Cook County, defendant, Farley Shumpert, was indicted for "murder" under the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, pars. 9—

1(a)(1), (a)(2) (the old homicide statute)). The murder allegedly took place on May 1, 1987. Defendant filed a motion to dismiss the indictment alleging that Public Act 84—1450 (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2)) (the new Act or the Act), amending the old homicide statute, became effective on January 5, 1987. The new Act replaces the offense of murder with first degree murder, and replaces the offense of voluntary manslaughter with second degree murder. Since the new Act does not include an offense of "murder," defendant alleged that the indictment failed to state an offense. In response, the State argued that the new Act did not become effective until July 1, 1987; hence, defendant was properly indicted under the old homicide statute. The circuit court held that the new Act became effective on January 5, 1987, and therefore granted defendant's motion to dismiss. The State appealed. We allowed a direct appeal to be taken to this court pursuant to Supreme Court Rule 302(b) (107 Ill. 2d R. 302(b)).

The sole issue presented for review is whether the Act became effective on July 1, 1987, as the State contends, or on January 5, 1987, as defendant contends.

The history relative to the passage of the Act is as follows. The General Assembly passed Senate Bill 522 on June 23, 1986. The bill was then sent to the Governor for his signature. Pursuant to his amendatory veto power, the Governor returned the bill to the General Assembly with specific recommendations for change. The General Assembly accepted the Governor's recommendations on December 3, 1986, and the Governor certified the bill on January 5, 1987.

The State argues that the Act does not contain an effective-date provision, and it therefore became effective on July 1, 1987, by operation of law. (See Ill. Rev. Stat. 1987, ch. 1, par. 1202.) Defendant alleges that the Act contains a provision calling for an effective date of Jan-

uary 1, 1987, and it therefore became effective on January 5, 1987, the date the Governor certified the bill. (See Ill. Rev. Stat. 1987, ch. 1, par. 1201(b).) In the alternative, defendant contends that even if the Act does not contain an effective-date provision, it became effective on January 5, 1987, by operation of law. (See Ill. Rev. Stat. 1987, ch. 1, par. 1201(a).) We agree with the State.

The underlying question is whether the Act contains an effective-date provision. Section 13 of the Act provides:

"This amendatory act of 1986 shall only apply to Acts occurring on or after January 1, 1987, which cause the death of another." (Pub. Act 84—1450, §13.)

The State argues that section 13 is not an effective-date provision because it does not provide expressly that it is one. An effective-date provision "must be expressly and clearly made." (2 A. Sutherland, Statutory Construction §33.02 (4th ed. 1986).) The purpose of this rule is to provide notice as to the date the public act takes effect. Accordingly, in each effective-date provision the General Assembly uses straightforward and unambiguous language. For example, section 3 of Public Act 84—1451 provides: "This Act shall *take effect* upon its becoming law" (emphasis added); and section 5—1 of Public Act 84—1452 provides: "This Act shall *take effect* on January 1, 1987" (emphasis added). (1986 Ill. Laws 4260-61.) An examination of the effective-date provisions of other public acts reveals that the General Assembly consistently uses such language.

In contrast, section 13 of the Act is not straightforward. The section, which provides that Public Act 84—1450 "shall only *apply* to *Acts* occurring on or after January 1, 1987" (emphasis added), does not state that it shall take effect on January 1, 1987. Section 13 merely provides that whenever the Act does take effect, it shall

apply to acts occurring on or after January 1, 1987; in other words, that the Act shall be applied retroactively from January 1, 1987. In fact, this court has stated previously, in *dicta*, that the Act shall be applied retroactively from January 1, 1987, but we declined to rule on the validity of this retroactivity. *People v. Reddick* (1988), 123 Ill. 2d 184, 197.

Several secondary sources also support the view that the Act does not contain an effective-date provision. Both Laws of Illinois, 84th General Assembly, 1986 Session, and West's Illinois Legislative Service, 1986 Laws, 84th General Assembly, No. 10, published in their respective volumes that the Act became effective on July 1, 1987. Moreover, at least two law review articles have taken the position that the Act became effective on July 1, 1987. (O'Neill, *An Analysis of Illinois' New Offense of Second Degree Murder*, 20 J. Marshall L. Rev. 209 (1986); Haddad, *Second Degree Murder Replaces Voluntary Manslaughter in Illinois: Problems Solved, Problems Created*, 19 Loy. U. Chi. L.J. 995 (1988).) The uncertain draftsmanship of section 13 has led this court, the editors of Laws of Illinois and West's Illinois Legislative Service, and at least two legal scholars to conclude that the Act does not contain an effective-date provision.

Notwithstanding the ambiguity of section 13, defendant cites two reasons in support of his contention that the section is an effective-date provision. First, defendant points out that the Governor and two legislators have referred to section 13 as an effective-date provision. Although persuasive, these statements are not conclusive and this court is not bound by them. (See *People v. Porter* (1988), 122 Ill. 2d 64, 81.) We note that the remarks were brief, casual, and in no way inspired by legislative debate. Furthermore, the statements are contrary to the express language of the section. As noted above, section 13 does not state when the Act shall take

effect; it merely states that it "shall only apply to Acts occurring on or after January 1, 1987."

Defendant's second contention is that the Act, if applied retroactively to January 1, 1987, would violate the State and Federal constitutional prohibitions against *ex post facto* laws. (Ill. Const. 1970, art. I, §16; U.S. Const., art. I, §§9, 10.) To avoid this construction, defendant contends that section 13 must be a provision calling for an effective date of January 1, 1987.

We first address whether the retroactive application of the Act violates either the State or the Federal prohibition against *ex post facto* laws. A law is *ex post facto* if it is both retroactive and more onerous than the law in effect on the date of the offense. (*Weaver v. Graham* (1981), 450 U.S. 24, 30-31, 67 L. Ed. 2d 17, 24, 101 S. Ct. 960, 965.) We have held that a law is *ex post facto* if it makes criminal an act that was innocent when done, if it increases the punishment for a previously committed offense, or if it alters the legal rules of evidence to make conviction easier. (*People v. Anderson* (1973), 53 Ill. 2d 437, 441.) Thus, a law which decreases the degree of proof necessary to convict a defendant is *ex post facto* if retroactive. *Thompson v. Missouri* (1898), 171 U.S. 380, 385, 43 L. Ed. 204, 207, 18 S. Ct. 922, 924.

Under the old homicide statute, the State had the burden to prove, beyond a reasonable doubt, the elements of murder. (*People v. Reddick* (1988), 123 Ill. 2d 184, 197.) The defendant then had the opportunity to present evidence of a factor in mitigation, serious provocation or unreasonable belief, either of which must have been present to reduce an offense of murder to voluntary manslaughter. (123 Ill. 2d at 197.) The State then had the burden to prove, beyond a reasonable doubt, the absence of the factor in mitigation. (123 Ill. 2d at 198.) Under the new Act, the State still bears the burden to prove, beyond a reasonable doubt, the elements of first

degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1.) However, the defendant now bears the burden to prove, by a preponderance of the evidence, one of the factors in mitigation which must be present to reduce an offense of first degree murder to second degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2.) Thus, the new Act not only requires the defendant to come forward with *some* evidence of a factor in mitigation; it requires the defendant to prove, *by a preponderance of the evidence*, a factor in mitigation. Furthermore, the State is no longer required to prove, beyond a reasonable doubt, the absence of the factor in mitigation. The Act is therefore *ex post facto* if retroactive.

If the Act were to be applied retroactively to January 1, 1987, we must hold that it is an *ex post facto* law. If, however, the Act contains a provision calling for an effective date of January 1, 1987, the members of the legal community and general public would be deprived of the proper notice that is essential in an effective-date provision. Either interpretation of section 13 is absurd. As we are obliged to construe statutes to avoid absurd or unjust consequences (*Faheem-El v. Klincar* (1988), 123 Ill. 2d 291, 302), we will examine the policy underlying both the prohibition against *ex post facto* laws and the rules governing effective dates of laws to reach the most logical result.

The cornerstone of the State and Federal constitutional prohibitions against *ex post facto* laws is that persons have a right to fair warning of the conduct which gives rise to criminal penalties, the degree of punishment and the legal rules of evidence. (*People v. Coleman* (1986), 111 Ill. 2d 87, 93.) Likewise, the cornerstone of the rules governing effective dates of laws is that persons have a right to fair warning of the contents of a bill so as to be given a sufficient opportunity to conform their conduct to the law. (*Mulligan v. Joliet Regional*

*Port District* (1988), 123 Ill. 2d 303, 315.) The common purpose is to provide persons with *fair warning*. The Act, if applied retroactively, would violate the State and Federal constitutional prohibitions against *ex post facto* laws because persons indicted for homicide before the Act actually became effective would not have fair warning of the changes in the law. The same problem would arise if we were to hold that the Act contains a provision calling for an effective date of January 1, 1987. As noted above, the ambiguity of section 13 has led this court and other members of the legal community to conclude that the Act does not contain an effective-date provision. Consequently, persons would not have fair warning that the changes in the law became effective on January 1, 1987. This result contravenes the purpose of both the constitutional prohibitions against *ex post facto* laws and the rules governing effective dates of laws.

We therefore adhere to the language of *Reddick* and hold that the Act does not contain an effective-date provision. We further hold that section 13 provides that the Act shall be applied retroactively to January 1, 1987. However, we hold that the retroactive application of the Act violates the State and Federal constitutional prohibitions against *ex post facto* laws. (Ill. Const. 1970, art. I, §16; U.S. Const, art. I, §§9, 10.) As section 13 is severable from the remainder of the Act (see *County of Cook v. Renaissance Arcade & Bookstore* (1988), 122 Ill. 2d 123, 147), the remainder of the Act may stand. The Act shall be applied prospectively from its effective date.

As we hold that the Act does not contain an effective-date provision, we must determine its effective date. Absent such a provision, the date of passage of the bill governs when the bill becomes effective. A bill "passed" prior to July 1 becomes effective on the following January 1, or upon its becoming law, whichever is later (Ill. Rev. Stat. 1987, ch. 1, par. 1201); a bill "passed" after

June 30 becomes effective on the following July 1 (Ill. Rev. Stat. 1987, ch. 1, par. 1202). A bill is considered "passed" at the time of the final legislative action prior to the presentation to the Governor. Ill. Rev. Stat. 1987, ch. 1, par. 1203.

When the Governor exercises his amendatory veto power, the final legislative action is the legislature's vote to accept the Governor's recommendations for change. (*Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 316.) Therefore, an amendatorily vetoed bill is considered "passed" when the legislature votes to accept the Governor's recommendations. (123 Ill. 2d at 316.) The purpose for this rule is twofold. First, the members of the general public are placed on notice of the bill's contents in its *final form*. It would be illogical to consider an amendatorily vetoed bill "passed" prior to this date because the bill, as it existed when it was originally passed, was different due to the subsequent changes made by the Governor. We cannot hold the general public responsible for the contents of a bill before it is in its final form. (123 Ill. 2d at 316.) Second, the members of the general public are placed on notice of the date that an amendatorily vetoed bill is "passed," and accordingly, the date that it shall subsequently take effect. (See Ill. Rev. Stat. 1987, ch. 1, pars. 1201, 1202.) As a bill is considered "passed" at the time of the final legislative action (Ill. Rev. Stat. 1987, ch. 1, par. 1203), there can be no confusion that the legislature's vote to accept the Governor's recommendations for change is the final legislative action. *Mulligan*, 123 Ill. 2d at 316.

Defendant alleges that *Mulligan* stands for the proposition that an amendatorily vetoed bill is considered "passed" when the legislature votes to accept the Governor's recommendations for change *if* the Governor recommended substantive changes, and an amendatorily vetoed bill is considered "passed" on the original pas-

sage date *if* the Governor recommended only technical changes. Defendant points out that the public should have sufficient notice of the contents of a bill on its original passage date if the Governor recommended only technical changes. Defendant's allegation is without merit. *Mulligan* makes no distinction between substantive and technical changes. In fact, it is oftentimes difficult to determine what constitutes a substantive change as opposed to a technical change. The distinction may be relative. For example, one party may consider a change as substantive merely because it affects him; another party may consider the same change as technical merely because it does *not* affect him. We do not wish to open a new area of litigation to determine if a change is substantive or technical. Indeed, this would defeat one of the purposes of the rule set forth in *Mulligan*: to provide clear and definite notice of the date that an amendatorily vetoed bill takes effect.

Here, the General Assembly originally passed Senate Bill 522 on June 23, 1986. The Governor amendatorily vetoed the bill and returned it to the General Assembly with specific recommendations for change. The General Assembly accepted the Governor's recommendations on December 3, 1986. Therefore, Senate Bill 522 was "passed" on December 3, 1986, the date the General Assembly voted to accept the Governor's recommendations for change. Pursuant to "An Act in relation to the effective date of laws," the Act became effective on July 1, 1987. Ill. Rev. Stat. 1987, ch. 1, par. 1202.

For the reasons set forth above, the order of the circuit court is reversed and the cause is remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE CALVO took no part in the consideration or decision of this case.