THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN KNADE, Defendant-Appellant.

First District (4th Division)   Nos. 1—90—3394, 1—92—1597 cons.

Opinion filed August 26, 1993.

Bradley & Burke, Ltd., of Chicago (Thomas V. Gainer, Jr., of counsel), and Marc M. Barnett & Associates, of Palos Hills (Marian H. Donohue, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Gael O'Brien, Special Assistant State's Attorney, and Renee Goldfarb, Jeanne Lobelson, and Lawrence Page, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant, Brian Knade, was convicted of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)) and armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a)). He was subsequently sentenced to a 50-year term of imprisonment in the Illinois Department of Corrections for the murder conviction, and a 30-year term for the armed robbery conviction to be served concurrently to the murder sentence.

On appeal, defendant maintains (1) the trial court erroneously admitted hearsay testimony of prosecution witnesses who testified as to statements made by the victim shortly after the attack, as these statements did not fall within the spontaneous declaration or excited utterance exception to the hearsay rule; (2) the trial court erroneously admitted photographs into evidence which were not disclosed to defense counsel prior to trial; (3) the trial court erroneously admitted the victim's telephone book into evidence which contained alterations not properly documented by police; (4) the prosecutor called defendant a "skinhead" during closing argument which prejudiced him; (5) absent the spontaneous declarations of the victim, he was not proved guilty beyond a reasonable doubt; and (6) the trial court erroneously dismissed his post-conviction relief petition without an evidentiary hearing when the petition alleged a deprivation of due process and ineffective assistance of counsel.

We affirm.

The following pertinent facts were adduced at trial. Victor Trimuel testified that he worked for the victim at El Kat Industries, a picture frame building business, in Posen, Illinois. He stated that on November 15, 1988, another employee, Joe Thomas, told him that the victim was calling his name from his office at the front of the shop. Trimuel went to the front and saw that the door to the victim's office

was closed and locked. He and Thomas used a crowbar to open the door. They discovered the victim lying on the floor, covered with blood.

Trimuel asked the victim whether he knew the person responsible for the attack and the victim named Brian Knade, later identified as defendant. Trimuel stated that the victim's condition was "real bad" so he called the paramedics. Thomas then helped the victim into a chair and asked the victim who did this to him. The victim stated that defendant hit him and took his wallet. As Thomas wiped the blood off the victim, he observed a hole in the victim's head. Trimuel approached the victim and he also saw the hole, describing it as "real deep." Trimuel testified that he twice heard the victim tell Thomas that defendant attacked him. Thomas testified to the same facts.

Officer Timothy Poulus, of the Posen police department, testified that on November 15, 1988, shortly after 2 p.m., he was dispatched to El Kat Industries "for a battery victim with a head injury." He arrived at the building and saw the victim sitting in a chair in his office covered with blood. Officer Poulus asked the victim what happened and he stated that defendant, a former employee, was inquiring as to his earnings the year he was employed at El Kat. The victim stated that he told defendant everything would be sent to him in the future, and defendant then began to hit him about the head and the face.

Officer Poulus testified that when the fire chief and the paramedics arrived, the fire chief asked the victim what happened. Officer Poulus heard the victim tell the fire chief that a former employee came to ask about his earnings and then started to hit him for an unknown reason. The fire chief then asked the victim if he knew the employee and the victim responded, "I sure do; it was Brian Knade." The victim then asked the fire chief to hand him his telephone book, which he opened to the page containing defendant's name and telephone number. He told the fire chief that defendant lived in Midlothian, Illinois. Officer Poulus went to the emergency room and spoke with the victim, who recounted the same circumstances of his attack.

Timothy Sendera, a paramedic in the Village of Posen, testified that he and Brian Krizik, also a Posen paramedic, treated the victim on November 15, 1988. He stated that the victim was conscious and orientated to those around him. Sendera testified that he heard the victim tell police that a former employee took $200 from him and struck him to "total unconsciousness." The victim further stated that the employee was defendant, a resident of Midlothian, Illinois, whose telephone number was in a book on his desk. Brian Krizik testified to the same facts. Later, at the hospital, the victim died of his injuries.

Jeremy Heidrich, a friend and former roommate of defendant, testified that defendant told him that he beat his former boss in the head with the butt of a gun and took his wallet. Defendant also told him that the wallet contained $200 and that he threw the gun into a canal.

Jeremy's father, Robert Heidrich, testified that defendant stated he wanted to borrow or buy a gun because he killed his boss and the police were after him. Additional witnesses testified that defendant stated he killed his boss.

After a sentencing hearing and arguments in aggravation and mitigation, defendant was sentenced to a 50-year term in the Illinois Department of Corrections for the murder conviction, and a 30-year term for the armed robbery conviction to be served concurrently to the murder sentence. Defendant appeals.

Initially on appeal, defendant contends that the trial court erred in admitting the testimony of the prosecution witnesses who testified as to the victim's statements one hour after the attack, because they were not spontaneous, excited or unreflected. We disagree.

The factors used to determine whether a statement falls within the excited utterance exception to the hearsay rule were clearly outlined by our supreme court in *People v. House* (1990), 141 Ill. 2d 323. The requirements for admissibility are (1) the event must be sufficiently startling to induce a spontaneous or unreflected statement; (2) the absence of time to fabricate; and (3) the statement must relate to the circumstances of the event. (*House*, 141 Ill. 2d at 381.) The trial court may also consider other factors such as the nature of the event, the mental and physical condition of the declarant, and the presence or absence of self-interest. *House*, 141 Ill. 2d at 382; see *People v. Nevitt* (1990), 135 Ill. 2d 423.

In *House*, a woman's statement to a police officer at the hospital 2½ hours after she witnessed the murders of her sister and another woman and after she had been set on fire was deemed an excited utterance. The court found that "[t]he very nature of her injuries was such that the injuries undoubtedly commanded her full attention." *House*, 141 Ill. 2d at 384.

We believe a similar result is appropriate here. First, the victim was severely and repeatedly beaten with the butt of a gun to the extent that he had a hole in his head. Further, he was locked in an office for at least one hour, unable to move. He was completely covered with blood. Undoubtedly, this is a sufficiently startling occurrence to produce a spontaneous statement. Second, we cannot believe that, under these conditions, the victim would have been able to fabricate or attempt to fabricate a story about his attack. Third, the vic-

tim's statements to his employees after he was discovered related to the circumstances of the occurrence. We believe that these factors provide a sufficient foundation for the admission of the victim's statements. *People v. House* (1990), 141 Ill. 2d 323, 386.

Defendant argues that because the victim was alert, conscious, oriented and able to communicate, his statements were not made under the immediate and uncontrolled domination of the senses. *House* unequivocally dismisses this contention. The fact that the victim was " 'alert' and 'responsive' does not require exclusion because those states do not foreclose the possibility of a spontaneous and unreflecting statement." *House*, 141 Ill. 2d at 385.

The passage of time, defendant submits, is a significant consideration as it is also an indication that the victim's statements were not spontaneous or unreflected. The time factor is an elusive and variable element which is dependent upon the facts of the case. (*People v. Gaucho* (1988), 122 Ill. 2d 221, 241.) We find it inconceivable that the victim, suffering from such serious injuries and associated blood loss, would concoct a fabrication during the span of approximately one hour such that the spontaneity of his statements would be destroyed. Even if the victim had remained in his office undiscovered for a longer period of time, his physical state was so bad that we cannot conceive of his ability to concentrate on anything but his condition.

Defendant further questions the spontaneity of the victim's statements because the first words he spoke to the employees who discovered him were, "what are you deaf, I've been calling you," as opposed to his immediate identification of his attacker. In assessing this issue prior to trial, the trial court stated: "[The] individual's first opportunity to speak doesn't require that the first thing out of his mouth is the name of the offender." We agree. The simple fact that he made this sarcastic remark is, in itself, indicative of the stress and excitement he was under. The statements were properly admitted into evidence.

Next, defendant opines a discovery violation in the trial court's erroneous admission of crime scene photographs into evidence, as they were not disclosed to defense counsel prior to trial.

Defendant will only be granted a new trial if the discovery violation is prejudicial and if the trial court failed to eliminate the prejudice. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 172.) The factors used to establish a prejudicial violation are: "the closeness of the evidence, the strength of the undisclosed evidence, and the likelihood that prior notice could have helped the defense discredit the evidence." *Cisewski*, 118 Ill. 2d at 172; see *People v. Weaver* (1982), 92 Ill. 2d 545.

■ We do not believe, based on the above standard, that defendant suffered any prejudice. The photographs in question were of the victim's office where he was beaten. There were pictures of bloodstains on the floor and bloodstains on the victim's desk and a cabinet near the bathroom. These pictures do not have any bearing whatsoever on defendant's guilt but, rather, function as a description of the scene as it appeared following the attack.

Moreover, the evidence in this case is not close and we fail to see how prior notice of the photographs could have aided defendant's discrediting of this evidence. In determining prejudice, it is also appropriate to consider defendant's full opportunity to cross-examine the police officer who took the photographs. In sum, defendant has not demonstrated to this court how the prior disclosure of the complained-of photographs would have altered the outcome in this case.

Further, it is essential to note defendant's failure to request a continuance in order to examine the photographs. We believe this declination of additional time for discovery is some indication that defendant did not believe the evidence to be extremely prejudicial.

Next, defendant opines that the trial court erred in admitting the victim's personal telephone book containing ink in different colors which was not properly inventoried or taken into custody by police.

At the scene, the victim told Chief Krizik to pick up his telephone book and hand it to him. The victim then opened the book and pointed to defendant's name and telephone number which Krizik copied down. On direct examination, Chief Krizik identified the telephone book the prosecutor showed him as the one the victim told him to pick up at the scene. He then identified the page to which the victim turned containing defendant's name and telephone number. He testified that the victim pointed to defendant's name when identifying his attacker.

■ "A foundation for the admission of *** physical evidence may be made through its identification by witnesses or through a chain of possession. It is unnecessary to require both identification and the establishment of a chain of possession." (*People v. Stewart* (1984), 105 Ill. 2d 22, 59.) We find no abuse of discretion in the trial court's determination that Chief Krizik's identification of the telephone book was sufficient for its admission into evidence.

Next, defendant asserts that the prosecutor's use of the word "skinhead" when referring to him during closing argument was prejudicial.

■ We believe that this reference, innocent or intentional, was intemperate and improper. There is no evidence whatsoever that defendant is a member of any white supremacist organization, al-

though this is the inference that is reasonably drawn from the prosecutor's remark. Isolated remarks such as these, not based on any evidence, are improper and all too often this court must pass on their effect. This is a problem, however, that can easily be remedied by a prosecutor's increased attention to the appropriateness of his comments before they are made.

Nevertheless, in this particular case, we cannot say that this remark constituted a material factor in defendant's conviction or precluded his right to a fair trial such that a reversal is warranted. *People v. Johnson* (1986), 114 Ill. 2d 170, 199.

Next, defendant argues that, absent the testimony regarding the spontaneous declarations of the victim, the remaining evidence was insufficient to prove him guilty beyond a reasonable doubt.

■■ Assuming this argument valid, we will engage in a brief discussion. Defendant's friend and former roommate, Jeremy Heidrich, among others, testified that defendant told him he killed his boss. Defendant stated that he beat his boss to death with the butt of a gun and took his wallet containing $200. Defendant also told Heidrich that he took the wallet and went to a crack house in Robbins, Illinois. The wallet was later found in Robbins near crack houses. Heidrich had no way of knowing this information other than from defendant. The medical examiner, Dr. Robert Kirschner, confirmed that the victim's injuries could have resulted from being hit with the butt of a gun.

"It is well settled that the testimony of even one witness, if positive and credible, is sufficient to convict *** [citation] and the witness need not be the victim of the crime." (*People v. Diaz* (1981), 101 Ill. App. 3d 903, 913.) Defendant could therefore have been convicted based on the testimony of Jeremy Heidrich alone.

However, as previously elucidated, the victim's spontaneous declarations following the beating were properly admitted into evidence and defendant's conviction, based on all the evidence presented, was not erroneous.

Finally, defendant contends that the trial court improperly dismissed his post-conviction petition without an evidentiary hearing because the petition sufficiently alleged the constitutional deprivations of due process and effective assistance of counsel.

Defendant's ex-wife, Terry Knade, submitted an affidavit revealing that prior to sentencing, while waiting to speak with the assistant State's Attorney, she saw Judge Foxgrover, the victim's son and Officer David Torres having a conversation in the judge's chambers. She stated that she "observed Officer Torres hand Judge Foxgrover a

brown manilla envelope." She later told defense counsel of her observations.

Daniel Hagensee submitted an affidavit describing his observations made on the same day as those of Terry Knade. He stated that, while waiting to speak with the assistant State's Attorney, he saw Judge Foxgrover, the victim's son, the assistant State's Attorney and Officer Torres talking in the judge's chambers. He also informed defense counsel of his observations.

Based on these affidavits, defendant asserts judicial bias, effectively denying him a fair and impartial trial.

■ In *People v. Titone* (1992), 151 Ill. 2d 19, our supreme court adopted the standards set out by the Superior Court of Pennsylvania in *Commonwealth v. Shaw* (1990), 398 Pa. Super. 341, 580 A.2d 1379, which established the necessary requirements for a denial of due process claim based on judicial bias. The requisite showing must include (1) the establishment of a connection between the questionable extrajudicial activities and the trial judge's conduct at trial; and (2) the establishment of actual bias as a result of the trial judge's questionable extrajudicial conduct. It is defendant's onus to demonstrate these requirements. *Titone*, 151 Ill. 2d at 30.

■ Defendant has failed to make this showing. Simply, he has presented two affiants who claim to have seen the trial judge speaking with individuals associated with the case. His ex-wife stated that she saw an envelope being handed to the trial judge. It is on these facts that defendant premises his denial of due process claim. Mere speculation, however, is insufficient.

There is absolutely no evidence that the trial judge's acts precluded defendant's right to due process. Defendant does not point to any judicial conduct at trial in support of his claim of bias. For instance, defendant does not question the propriety of rulings, events or incidents which might cast doubt upon the trial judge's objectivity. Accordingly, actual bias from the trial judge's conduct cannot be established.

Determinations by the trial court regarding post-conviction hearing petitions will not be overturned unless manifestly erroneous. (*People v. Griffin* (1985), 109 Ill. 2d 293, 303; see *People v. Titone* (1992), 151 Ill. 2d 19, 31.) We do not believe the trial court's decision not to conduct an evidentiary hearing with respect to this issue was manifestly erroneous.

Relatedly, defendant posits that he was denied his sixth amendment right to effective assistance of counsel as defense counsel failed

to "investigate or claim" the allegations of Terry Knade and Daniel Hagensee.

An ineffective assistance of counsel demonstration has two requisite prongs:

> " ' "First, the defendant must show that counsel's performance was deficient [by] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second; the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." ' " *People v. Kubat* (1986), 114 Ill. 2d 424, 430, quoting *People v. Lewis* (1984), 105 Ill. 2d 226, 245-46, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.

■ Defendant argues that defense counsel's failure to "initiate appropriate action in the courtroom" after being apprised of the observed conversation in the trial judge's chambers denied him effective assistance of counsel. We disagree.

"Claims of ineffective assistance of counsel may be disposed of on the ground that the defendant suffered no prejudice from the claimed errors, without deciding the first prong [of the *Strickland* test], whether the errors were serious enough to constitute less than reasonably effective assistance." (*People v. Johnson* (1989), 128 Ill. 2d 253, 271.) Defendant has again failed to establish prejudice resulting from his contended violation. We do not believe that the decision reached was incompetent, and further find more than a reasonable probability that defendant would have been convicted even if defense counsel had investigated or claimed the alleged misconduct. Therefore, the trial court did not err in its failure to conduct an evidentiary hearing.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL and HOFFMAN, JJ., concur.