THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEMASO MERAS, Defendant-Appellant.

First District (3rd Division)   No. 1—94—1449

Opinion filed May 1, 1996.—Rehearing denied October 21, 1996.

Kathleen T. Zellner & Associates, of Naperville (Kathleen T. Zellner and Douglas H. Johnson, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and McRay Judge II, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a bench trial, defendant, Demaso Meras, was convicted of two counts of first-degree murder (720 ILCS 5/9—1(a) (West 1992)) and sentenced to 45 years' imprisonment. On appeal, he asserts that (1) the trial court erred in admitting the victim's dying statement to his brother as an excited utterance; (2) he was not proven guilty beyond a reasonable doubt; (3) the indictment was fatally defective because the State modified the cause of death in its closing argument; (4) his conviction should be reduced to second-degree murder; (5) he was denied effective assistance of counsel; and (6) his sentence was excessive. We affirm.

Mickey Campbell, the bartender at Tuman's Tap, 2159 West Chicago Avenue, Chicago, testified that the victim, Julian Sotelo, looked in the tavern's open window at 8:30 p.m. on June 12, 1990, to say "Hi." A couple of minutes later, Anthony Raimondo came into the tavern. Less than five minutes passed before a police officer summoned Campbell outside, where she saw the victim on the ground. He was unconscious and blood was gushing from his nose and mouth.

Anthony Raimondo testified that he saw the victim and two other men outside Tuman's Tavern on June 12, 1990. He had known the

victim for five years and had seen the other two men once before in Tuman's. For a few seconds, Raimondo watched the victim arguing with one of the other men, later identified as defendant, about money. Then, he went into Tuman's and ordered a beer. No more than a minute later, he heard screaming from outside. He ran outside, where he saw the victim lying on the ground in a pool of blood two to three feet from the front door, which was where he had been arguing with defendant. The victim was unconscious and his brother, Carlos, was at the scene.

Carlos Sotelo testified that the victim went toward Tuman's Tavern on his bicycle on the evening of June 12, 1990. About 10 minutes later, Carlos saw him unconscious on the ground outside the tavern. In an effort to revive his brother, Carlos asked him, "[W]ho did it[?]" In Spanish, the victim told Carlos "the same guys from last night."

Carlos explained that, the previous night, he had spoken to defendant in Tuman's Tavern. An hour later, he returned home to see defendant arguing with the victim on Sotelo's back porch. From 10 to 15 feet away, he heard the two men arguing for 10 to 15 minutes about money the victim owed defendant.

Chicago police officer Juan Acosta testified that he was in the community police office across from Tuman's Tavern when he saw three Hispanic men standing on the corner. Twice, he looked away then looked back at the three men. The second time, he saw one man down on the sidewalk and two men running away.

Chicago police officer Mike Miller testified that he showed several witnesses a photograph of defendant. Raimondo identified defendant's photograph from a group of six photographs.

Chicago police detective David Dal Ponte testified that he conducted two lineups with defendant on October 13, 1992. Raimondo and Carlos both positively identified defendant from the lineups. After being advised of his *Miranda* rights, defendant told Dal Ponte that he had been in Mexico since July of 1990 and returned three months earlier. He stated that he was outside the tavern with several other people shortly before the victim was beaten to death, but he did not do anything.

There was a stipulation that if Dr. Eupil Choi, the Cook County medical examiner, testified, he would state that he performed the autopsy on defendant. The autopsy report was admitted into evidence. It stated that there was massive bruising and swelling to the victim's eyelids, lips, chest, lower torso, arms, and legs, and massive hemorrhaging and contusions to his brain. The cause of death was multiple injuries due to blunt trauma.

Defendant presented no evidence in his defense. Following argu-

ments, the trial court found defendant guilty of first-degree murder and sentenced him to 45 years' imprisonment.

The first issue on appeal is whether the trial court erred in admitting the victim's statement to his brother as an excited utterance. When the victim regained consciousness at the scene, Carlos asked him who was responsible and he responded, "it was the same guys from last night." We do not need to address whether the statement was a dying declaration because the trial court did not consider the statement as a dying declaration.

Defendant asserts that the victim's hearsay statement to his brother was neither an excited utterance nor a spontaneous declaration because it lacked the necessary spontaneity. His argument is based on the victim regaining consciousness only moments before making the declaration, so that he did not have the mental faculties to understand and relate the circumstances surrounding his attack.

Defendant contrasts *People v. House*, 141 Ill. 2d 323, 566 N.E.2d 259 (1990), and *People v. Knade*, 252 Ill. App. 3d 682, 625 N.E.2d 172 (1993), to express that the victim's unconscious state moments before his statement to his brother precludes it from being spontaneous. Defendant describes the victim as being comatose, oblivious, and unresponsive.

Defendant's argument turns the decisions in *House* and *Knade* around. Those courts held that the victim's conscious, alert, and responsive state did not foreclose the possibility of a spontaneous and unreflecting statement. *House*, 141 Ill. 2d at 385; *Knade*, 252 Ill. App. 3d at 686. They said nothing about the statement of someone who had just regained consciousness being unresponsive. Instead, they looked at the totality of the circumstances, paying special attention to the declarant's opportunity to reflect and fabricate a story.

Defendant also argues that the statement did not relate to the circumstances of the beating because it did not describe the offense and the offenders or identify the offenders by name. Defendant maintains that the statement lacked the specificity and foundation to show the relationship between the victim's declaration and the attack because his statement was ambiguous.

■ After considering the totality of the circumstances, we conclude that the victim's statement was an excited utterance. Statements admitted under the excited utterance exception to the hearsay rule are admitted because the contents of the out-of-court statements tend to be reliable. *People v. Nevitt*, 135 Ill. 2d 423, 443, 553 N.E.2d 368 (1990). For a hearsay statement to be admissible under the excited utterance exception, there must be (1) an occurrence or event sufficiently startling to cause a spontaneous and unreflecting state-

ment; (2) an absence of time to fabricate; and (3) a relationship between the statement and the circumstances of the occurrence. *People v. Smith*, 152 Ill. 2d 229, 258, 604 N.E.2d 858 (1992); *House*, 141 Ill. 2d at 381.

No one factor is determinative since each case rests on its own facts and is judged from the totality of the circumstances surrounding the event. *People v. Lesure*, 271 Ill. App. 3d 679, 683, 648 N.E.2d 1123 (1995). Among the factors courts consider are (1) the passage of time; (2) the nature of the event; (3) the mental and physical condition of the declarant; (4) the distance travelled from the scene before making the declaration; (5) the presence or absence of self-interest; (6) the influences of intervening occurrences; and (7) the nature and circumstances of the statement itself. *House*, 141 Ill. 2d at 382.

A statement identifying the attacker in response to a question does not necessarily destroy its spontaneity. *People v. Walker*, 262 Ill. App. 3d 796, 802, 635 N.E.2d 684 (1994). The primary question to be addressed in such a situation is whether there was time for reflection and invention. *People v. Wofford*, 156 Ill. App. 3d 238, 245, 509 N.E.2d 1026 (1987). In *People v. Gacho*, 122 Ill. 2d 221, 240-41, 522 N.E.2d 1146 (1988), the victim's statement was a spontaneous declaration even though it was made in response to a police officer's question, "Who did this to you?"

■ The totality of the circumstances in this case indicates that the victim's statement was an excited utterance. Not only was the severe beating a sufficiently startling occurrence, but the statement was made only minutes after the beating and immediately after the victim gained consciousness, while he was lying in a pool of blood. The victim had been unconscious from the time he was discovered beaten until just before he spoke to Carlos, which was a few minutes after the beating. His unconsciousness prior to his statement makes it more reliable, not less reliable, because he did not have the opportunity to reflect on the beating or to fabricate a story.

Further, there was a relationship between the statement and the beating. When Carlos asked "[W]ho did this to you[?]" the victim responded, "the same guys from last night." That was not an ambiguous statement. Carlos witnessed an argument between the victim and defendant the night before the beating. It was clear from the statement, "it was the guys from last night," that the victim knew that Carlos had witnessed the argument and was identifying his attackers. In light of all the surrounding circumstances, the victim's statement was inherently reliable and admissible. Thus, the trial court did not abuse its discretion when it allowed the victim's statement into evidence as an excited utterance. *People v. Kaczmarek*, 243 Ill. App. 3d 1067, 1078, 613 N.E.2d 1253 (1993).

The next issue is whether defendant was proven guilty beyond a reasonable doubt. In addition to claiming that the State failed to prove his presence during the offense, defendant argues that even if he were present, his mere presence at the scene prior to the attack and opportunity to attack the victim are insufficient to support a guilty finding. We disagree.

Although defendant is correct in his citation of the law, he relies on cases that are distinguishable. See *People v. Howard*, 74 Ill. App. 3d 870, 393 N.E.2d 1084 (1979); *People v. Dowaliby*, 221 Ill. App. 3d 788, 582 N.E.2d 1243 (1991).

In addition, defendant argues that the victim did not know that Carlos observed the argument on the previous night. Thus, defendant concludes that the court could not have inferred that the victim knew his brother had witnessed the argument.

■ When a conviction is based solely on circumstantial evidence, it will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985). Upon judicial review, all the evidence is to be considered in the light most favorable to the prosecution. *People v. Williams*, 165 Ill. 2d 51, 55, 649 N.E.2d 397 (1995). The trial court is responsible for determining the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence. *People v. Enis*, 163 Ill. 2d 367, 393, 645 N.E.2d 856 (1994); *People v. Jimerson*, 127 Ill. 2d 12, 43, 535 N.E.2d 889 (1989).

In reviewing a challenge to the sufficiency of the evidence, this court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261.

■ Viewing the evidence in the light most favorable to the prosecution, it showed that: (1) the night before the beating, Carlos witnessed an argument about money between the victim and defendant; (2) in a lineup, Carlos positively identified defendant as the man who had the argument with the victim; (3) the bartender at Tuman's Tavern saw the victim minutes before the beating; (4) Raimondo saw the victim and two men in front of Tuman's arguing over money minutes before the beating; (5) no more than a minute after entering the tavern, Raimondo heard a scream and ran outside, where the victim was lying on the ground, unconscious and bleeding, in the same place where he had been arguing; (6) Raimondo positively identified defendant in a photo array and a lineup as the man who was arguing with the victim; (7) from across the street, Officer Acosta

saw three Hispanic men arguing outside Tuman's; (8) Officer Acosta then saw two men running away and one man down on the ground; (9) shortly after being beaten, the victim told Carlos that "the same guys from last night" beat him; and (10) defendant fled to Mexico shortly after the beating and stayed for over two years.

Because a rational trier of fact could have found the essential elements of first-degree murder beyond a reasonable doubt from those facts, we affirm the conviction. *Collins*, 106 Ill. 2d at 261.

Defendant next argues that a fatal defect in the indictment prejudiced and misled him. Specifically, defendant complains that the indictment alleges that defendant killed the victim with a blunt object. Not only was there no evidence of a blunt object presented at trial, defendant argues, but the court stated, "I'm not sure that there was a blunt object other than feet and fists." Defendant maintains that he was prejudiced because he prepared his defense to assert that he did not have a blunt object at the time of the beating.

A variance between the facts alleged and the proof is not fatal if the facts in question are not essential elements of the offense charged. *People v. Thomas*, 137 Ill. 2d 500, 522, 561 N.E.2d 57 (1990). It is only where the means used are integral parts of the offense, such as in the crime of assault with a deadly weapon, that the means must be alleged in the indictment. *People v. Reynolds*, 178 Ill. App. 3d 756, 764, 533 N.E.2d 932 (1989).

■ The State is not required to plead evidentiary details. *People v. Givens*, 135 Ill. App. 3d 810, 817, 482 N.E.2d 211 (1985). Where an indictment charges all of the essential elements of the offense under a statute, other matters unnecessarily added may be rejected as surplusage. *People v. Figgers*, 23 Ill. 2d 516, 519, 179 N.E.2d 626 (1962); *People v. Smith*, 259 Ill. App. 3d 492, 501, 631 N.E.2d 738 (1994); *Givens*, 135 Ill. App. 3d at 817. Immaterial matters or matters that may be omitted from an indictment without rendering it insufficient or doing damage to the material averments are surplusage. *Figgers*, 23 Ill. 2d at 519.

The means by which the killing was accomplished was not an element of first-degree murder because the gravamen of the offense is the unlawful killing of another. Therefore, the phrase "with a blunt object" could have been omitted from the indictment without doing damage to the material averments, making it surplusage.

We must also consider whether the indictment misled defendant. Even if an allegation is not essential, reversal is required if a material variance misled the defendant in preparing his defense or exposing him to double jeopardy. *Figgers*, 23 Ill. 2d at 518-19; *Givens*, 135 Ill. App. 3d at 818.

■ That did not occur in this case. The indictment fully informed defendant of the charge against him with sufficient specificity to allow him to prepare his defense. The indictment complied with all the statutory requirements and defendant does not show how he was misled. He does not claim that he would have done anything differently without the phrase "with a blunt object" in the indictment. Defendant's defense was that he was not present at the time the victim was beaten and, even if he were, he did not participate in the beating. He did not suggest that, because of the term "with a blunt instrument" in the indictment, he omitted to put before the court any facts bearing upon his guilt or innocence. See *People v. Simpkins*, 48 Ill. 2d 106, 110-11, 268 N.E.2d 386 (1971); *Givens*, 135 Ill. App. 3d at 817. Moreover, the defense attorney stated during the hearing on the post-trial motion that a blunt object can be anything from hands to a hammer.

■ Defendant is also mistaken in his argument that the State changed its theory in its rebuttal closing argument. At no time during the trial did the State present evidence that a weapon was involved. Not only did the State not mention the presence of a weapon during its opening statement, but it did not present any evidence of a weapon during the trial. During its initial closing argument, the State argued that no weapon was involved and, in its rebuttal argument, stated that hands and feet can be blunt objects.

Defendant next argues that his conviction should be reduced to second-degree murder because the evidence showed that the attack was the result of a sudden and intense passion by a man whose emotions erupted. Defendant waived this issue because he did not raise it during the trial or in his post-trial motion. *Williams*, 165 Ill. 2d at 60; *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).

■ Even if the issue had not waived, however, defendant was properly convicted of first-degree murder because he did not prove by a preponderance of the evidence that he committed the murder under sudden and intense passion. Once the State had proven first-degree murder beyond a reasonable doubt, defendant had to prove by a preponderance of the evidence that he was acting under a sudden and intense passion resulting from serious provocation by the victim. *People v. Shumpert*, 126 Ill. 2d 344, 352, 533 N.E.2d 1106 (1989); 720 ILCS 5/9—2(c) (West 1992). Serious provocation is conduct sufficient to excite an intense passion in a reasonable person. 720 ILCS 5/9—2(b) (West 1992).

The record is devoid of any evidence whatsoever that the victim seriously provoked defendant. The only evidence of the victim's actions was that he was arguing with defendant using only words.

Thus, defendant's conviction cannot be reduced to second-degree murder.

■ Next, defendant asserts that he was denied effective assistance of counsel due to several errors by his attorney in that he: (1) failed to adequately cross-examine Campbell and Carlos; (2) was unprepared for argument on the victim's statement to Carlos; (3) failed to argue for second-degree murder; and (4) argued a new theory in the post-trial motion that the beating was a result of a drive-by beating. Defendant contends that the outcome of the trial would have been different without these errors. We disagree.

In order to establish ineffective assistance of counsel, a defendant must prove that his counsel was deficient and that he was prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246 (1984). To show prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

There is no such evidence in this case. Because defendant did not show that his attorney's actions were incompetent or that he was prejudiced by the alleged deficiencies, we conclude that defendant received effective assistance of counsel.

■ Finally, we hold that defendant's 45-year sentence was not excessive. There is a presumption that a trial court's sentencing decision is based on proper legal reasoning and that it considered all evidence in mitigation. *People v. Hughes*, 259 Ill. App. 3d 172, 179, 632 N.E.2d 251 (1994); *People v. Glass*, 239 Ill. App. 3d 916, 931, 606 N.E.2d 655 (1992). Where the sentence is within the statutory limits, a reviewing court will not exercise its power to reduce the sentence absent a finding that the trial court abused its discretion. *People v. Cabrera*, 116 Ill. 2d 474, 493-94, 508 N.E.2d 708 (1987).

For first-degree murder, the range of sentence is 20 to 60 years' imprisonment. 730 ILCS 5/5—8—1(a)(1)(a) (West 1992). Since defendant's sentence was in the middle of that range, the trial court considered proper factors, and there is no evidence that the trial court considered improper factors, we conclude that there was no abuse of discretion.

Based on the foregoing, we affirm the circuit court's judgment.

Affirmed.

RIZZI, P.J., and GREIMAN, J., concur.