Alex APOLINAR, Appellant,

v.

The STATE of Texas.

No. PD–1057–03.

Court of Criminal Appeals of Texas.

Feb. 2, 2005.

Ernest Davila, Houston, for Appellant.

Lori Deangelo Fix, Asst. District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

*OPINION*

PRICE, J., delivered the opinion for a unanimous Court.

During the appellant's trial for aggravated robbery, the trial court admitted a hearsay statement made by the victim four days after the attack. We granted review to determine whether the victim's hearsay statement qualifies as an excited utterance. We conclude that it does because a reasonable trial judge could have concluded that the victim was still under the influence of the startling event—the robbery—when he made the statement.

I. Facts and Procedural History

Pelagio Jimenez was attacked and robbed by two assailants on a Friday. During the attack, he disarmed the two attackers and stabbed them both. Albert Thompson, a man whose patio was about 200 feet away from the scene, saw the attack and called the police.

The police arrived a few moments later. One of the officers spoke to Jimenez in Spanish. The officer was able to discern two words in Spanish that Jimenez said: knife and two. Jimenez spoke a particular dialect of Filipino and a small amount of Spanish, but could not understand or speak English.

Jimenez was taken to the hospital, where a staff member called his daughter, Juliet Ralph. She went to the hospital, but was unable to see or speak with her father because he was in surgery. Hospital staff members told Ralph that they could not understand what Jimenez had been saying when he came into the emergency room.

Ralph said that she was not able to speak with her father until Tuesday because after he was out of surgery he was heavily medicated, unconscious, or incoherent.[1] On Tuesday, Jimenez was awake and alert. When Ralph asked Jimenez what had happened to him, Jimenez responded that "they robbed me again."

---

1. During the trial and before Ralph testified, Jimenez testified about his recollection of the events on the night of the attack.

Ralph testified that he was "kind of mad" and that he was excited because he had gotten even with his attackers. Jimenez spoke in a loud voice and gestured with his hands. Ralph explained that her father is ordinarily a calm person and that it was unusual for him to be so upset. During her testimony, Ralph repeated Jimenez's statement over the appellant's objection.[2]

On direct appeal, the appellant complained that the trial court erred in admitting the hearsay statement. The Court of Appeals held that the trial court did not abuse its discretion.[3] The Court concluded that, although continuity of excitement from the startling event until the statement is made is one way to assure the reliability of a hearsay statement, it is not the only way. Jimenez's statement could reasonably have been considered an excited utterance because he had not had the opportunity to reflect or fabricate while he was unconscious.

In a dissent from the denial of en banc review, Justice Jennings argued that the Court of Appeals's holding is inconsistent with our holding in *Zuliani v. State*.[4] The dissent states that the Court of Appeals's reliance on unconsciousness as a substitute for continuous excitement "logically precludes the possibility that his statements were 'made while [he] was under the stress' " of the attack.[5]

We granted review to determine whether the Court of Appeals erred in holding that a hearsay statement made four days

after a startling event could be admitted as an excited utterance. We will affirm because, under the unusual circumstances of this case, the trial court could have reasonably concluded that Jimenez was still under the influence of the attack and that he was incapable of reflection or fabrication.

## II. The Law

We review a trial court's decision to admit evidence over objection under an abuse of discretion standard and will not reverse that decision absent a clear abuse of discretion.[6] The trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement.[7]

Hearsay statements are generally not admissible unless the statement falls within a recognized exception to the hearsay rule.[8] One such exception is the excited utterance exception. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[9] The exception is based on the assumption that the declarant is not, at the time of the statement, capable of the kind of reflection that would enable him to fabricate information.[10]

To determine whether a statement is an excited utterance, trial courts should determine "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or

2. The appellant's objection was based solely on the general rule prohibiting the admission of hearsay. He did not object on the basis of the confrontation clause.

3. *Apolinar v. State*, 106 S.W.3d 407 (Tex.App.-Houston [1st Dist.] 2003).

4. *Id.*, at 423 (citing *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App.2003)).

5. *Id.*, at 424.

6. *Zuliani*, 97 S.W.3d at 595.

7. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim.App.1992).

8. Tex.R. Evid. 802.

9. Tex.R. Evid. 803(2).

10. *Zuliani*, 97 S.W.3d at 595.

condition" when the statement is made.[11] Factors that the trial court may consider include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving.[12]

### III. Arguments and Analysis

The appellant argues that the Court of Appeals erred in affirming the trial court's admission of the statement. He focuses on two points: one legal and one factual. First, he argues that the state of excitement must be continuous during the period between the startling event and the statement. Next, he argues that, assuming that unconsciousness may be a substitute for continuous excitement, Jimenez was not unconscious during the entire period from when he was attacked until he gave the statement.

### A. Must the State of Excitement Be Continuous?

First, the appellant claims that the state of excitement must be continuous. In support of this claim, he cites cases from Texas courts of appeals.[13] He argues that the Court of Appeals's theory that unconsciousness may substitute for continuous

stress of excitement has not been recognized by other courts.

In response to the appellant's first point, the State claims that the cases cited by the appellant in support of his claim are distinguishable and that there are cases in other jurisdictions that support the Court of Appeals's holding that the unconsciousness can support the finding that Jimenez was still dominated by the stress of the attack when he gave the statement.

The appellant cites four cases from Texas courts of appeals in support of his claim that the stress from the exciting event must be continuous. We agree with the State that these cases are distinguishable from the case before us.

In *Mosley v. State,*[14] *Gay v. State,*[15] and *Vera v. State,*[16] the State sought to introduce victim outcry statements in cases of aggravated sexual assault as excited utterances. In *Mosley*, the statement came several days after Mosley molested his daughter. During that time period, the victim was returned to her normal caregiver and had the opportunity to reflect.[17] In *Gay*, the statement was made ten days after the aggravated sexual assault.[18] In *Vera*, the statement was made about five

---

11. *Zuliani,* 97 S.W.3d at 596 (citing *McFarland v. State,* 845 S.W.2d 824, 846 (Tex.Crim. App.1992)).

12. *Id.,* at 595–96; *see also* 2 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 272, at 207–08 (5th ed.1999).

13. *Ytuarte v. State,* No. 09–01–00068–CR, 2002 WL 31322769, 2002 Tex.App. LEXIS 7494 (Tex.App.-Beaumont 2002, pet. dism'd, untimely filed) (not designated for publication); *Mosley v. State,* 960 S.W.2d 200 (Tex. App.-Corpus Christi 1997, no pet.); *Gay v. State,* 981 S.W.2d 864 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd); *Vera v. State,* 709 S.W.2d 681 (Tex.App.-San Antonio 1986, pet. ref'd).

14. The State first attempted to offer the statement under Code of Criminal Procedure Article 38.072. The Court of Appeals held that the State could not rely on Article 38.072 because it had not complied with the provisions of the Article.

15. *Gay v. State,* 981 S.W.2d 864 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd).

16. *Vera,* 709 S.W.2d at 683.

17. *Mosley,* 960 S.W.2d at 204.

18. *Gay v. State,* 981 S.W.2d at 867.

hours after the assault.[19] In each case, the courts of appeals held that the children were capable of reflection.[20]

Finally, in *Ytuarte v. State*,[21] an aggravated assault case, the State offered the testimony of a police officer who interviewed the victim shortly after the attack. According to the officer, the victim had told him that Ytuarte had attacked her and threatened to kill her while brandishing a baseball bat. The officer said that the victim was tearful, distraught, and in a lot of pain. Before the victim had made her statement to the officer, she had gone to the hospital alone and, after waiting some time, returned home. Someone else took her to another hospital. After treatment and sedation, the officer questioned her. The Court of Appeals concluded that because of the lengthy delay and the period of time when the victim was not with her attacker, the victim had had an opportunity to reflect.[22]

These cases are all distinguishable from the facts of this case because the victim-declarants were awake and coherent: not unconscious, heavily medicated, or incoherent. As a result, these cases do not support the appellant's proposition.

More on point is *Parks v. State*.[23] In that case, the admission of a statement by a declarant who had been shot was held to be an abuse of discretion because of the six-hour delay and the fact that the victim had undergone surgery. In that case, the Court of Appeals found that the intervening circumstances—anesthesia, surgery, being in the recovery room—between the shooting and the statement attenuated the shock of the shooting.[24]

But there have been other cases in other jurisdictions where courts have found that a period of unconsciousness or shock can support a finding that a hearsay statement was an excited utterance. For example, in *State v. Wallace*,[25] the Ohio Supreme Court held that a hearsay statement made by the victim of an attempted murder and assault about fifteen hours after the attack was an excited utterance for purposes of Ohio's version of the exception to the hearsay rule. During the fifteen-hour period between the attack and the statement, the declarant had been "unconscious, with intermittent periods of consciousness or semi-consciousness."[26] The Ohio Supreme Court said, "A period of unconsciousness, even an extended period, does not necessarily destroy the effect of a startling event upon the mind of the declarant for the purpose of satisfying the excited-utterance exception to the hearsay rule."[27] Ultimately, the Court decided that there was no indication in the record that the declarant had a meaningful opportunity to reflect during the intermittent periods of consciousness and semi-consciousness.[28]

19. *Vera*, 709 S.W.2d at 683.

20. *Gay v. State*, 981 S.W.2d at 867; *Mosley*, 960 S.W.2d at 204; *Vera*, 709 S.W.2d at 683.

21. *Ytuarte*, No. 09–01–00068–CR, 2002 WL 31322769, 2002 Tex.App. LEXIS 7494.

22. *Id.*, at *1, at *12.

23. *Parks v. State*, 843 S.W.2d 693 (Tex.App.-Corpus Christi 1992, pet. ref'd).

24. *Id.*, at 697–98.

25. *State v. Wallace*, 37 Ohio St.3d 87, 524 N.E.2d 466 (1988). *See also A.C.M. v. State*, 855 So.2d 571 (Ala.Crim.App.2002); *People v. Meras*, 284 Ill.App.3d 157, 219 Ill.Dec. 579, 671 N.E.2d 746 (1996); *People v. Washington*, 71 Cal.2d 1170, 81 Cal.Rptr. 5, 459 P.2d 259 (1969).

26. *Wallace*, 524 N.E.2d at 470.

27. *Ibid.*

28. *Ibid.*

While intervening circumstances may diminish the stress from an exciting event, the opposite also can be true. Each case that involves a period of unconsciousness between the time of the startling event and the statement must be reviewed in light of the facts and circumstances of the case. Rather than say that unconsciousness is a substitute for continuity of the stress of the event, we conclude that the declarant's state of consciousness is a factor to consider in the analysis. Trial courts and reviewing courts should address this fact within the factors for a traditional analysis to determine whether a hearsay statement falls within the excited utterance exception.

## B. Must the Declarant Be Unconscious for the Entire Duration?

In his second argument in opposition to the Court of Appeals's holding, the appellant claims that, even if unconsciousness is not a bar to the finding that a statement is an excited utterance, Jimenez's statement still should not have been admitted. The appellant claims that because Jimenez was not unconscious during the entire period between the attack and the statement, he was capable of reflection and fabrication.

In response to the appellant's second point, the State claims that the evidence supports that when Ralph visited Jimenez in the hospital he was in surgery, unconscious, heavily medicated, or incoherent until Tuesday, the day that he gave his statement. The State also claims that this is a fact finding, and that reviewing courts should afford almost total deference to the trial court's findings of fact.[29]

As in *Wallace,* the record in this case indicates that Jimenez was not unconscious during the entire four day period. He spoke to hospital staff members in the emergency room, and Ralph testified that, during the four-day period, her father was unconscious *or* heavily medicated *or* incoherent.

We find *McCormick on Evidence* to be helpful in dealing with situations in which a long period of time has passed between the startling event and the statement. It states

A useful rule of thumb is that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process. Testimony that the declarant still appeared "nervous" or "distraught" and that there was a reasonable basis for continuing emotional upset will often suffice.[30]

We find this persuasive, particularly because it is similar to our analysis in *Zuliani.*[31] In that case, we held that a statement made twenty hours after an assault on the victim by the defendant was an excited utterance because (1) the victim had been with her attacker during the entire period and (2) the victim was clearly still very upset, and thus, still under the influence of the attack.[32]

Just as the Court did in *Wallace,* we conclude that the declarant need not necessarily have been unconscious for the entire period between the startling event and the statement, so long as the record supports the reasonable conclusion that

29. For this proposition, the State cites *Hernandez v. State,* 957 S.W.2d 851, 852 (Tex. Crim.App.1998).

30. 2 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 272, at 207–08 (5th ed.1999).

31. *Zuliani,* 97 S.W.3d at 596.

32. *Ibid.*

the declarant did not have a meaningful opportunity to reflect.

## IV. Application

We will now determine whether Jimenez was still dominated by the emotions, excitement, fear, or pain of the attack when he made the statement by considering the following factors: (A) the length of time between the occurrence and the statement and the circumstances, (B) the demeanor of the declarant, (C) whether the statement was made in response to a question, and (D) whether the statement is self-serving.

### (A) Length of the Delay and the Circumstances

Four days is a very long time between the startling event and the statement. As a result, we must look to the record for evidence that Jimenez did not have a meaningful opportunity to reflect.

Jimenez attempted to communicate with hospital staff when he was in the emergency room before surgery. The trial court could have reasonably concluded that, in the time between when Jimenez was stabbed in the abdomen and when he went under anesthesia for surgery, he was still in shock and under the influence of the emotions from the attack.

Ralph testified that, when she arrived at the hospital on the night of the attack, her father was in surgery. She visited him each day and found him to be unconscious, heavily medicated, or incoherent. On Tuesday, when Ralph arrived her father was awake and coherent. When Ralph asked him what had happened, Ralph said that her father was animated, angry, and excited. Jimenez made hand gestures and spoke in a loud voice. As he was talking, he drew the attention of other people in the room.

We conclude, based on the record, that the trial court could have reasonably concluded that Jimenez had no meaningful opportunity to reflect between the time when he was attacked and when he gave the statement. Although the delay was long, this factor weighs, though not strongly, in favor of admission because Jimenez did not have a meaningful opportunity to reflect.

### (B) Demeanor of the Declarant

Ralph testified that her father was ordinarily a calm man and that it was unusual for him to be so loud and animated. We conclude that this factor weighs in favor of admission.

### (C) Whether the Statement Was Made in Response to a Question

The statement in this case was made in response to a question. Ralph testified that she asked Jimenez what had happened to him. There is no indication that the question was asked for any reason other than familial concern. And there is no indication that Jimenez's answer was anything but a spontaneous response after becoming coherent after a period of surgery, unconsciousness, and heavy medication. This factor weighs in favor of admission.

### (D) Whether the Statement Is Self–Serving

We can discern no self-serving motive from the record. The appellant suggests that Jimenez may have falsely accused the appellant to get even with him for a prior attack. Although Ralph was not the State's last witness, she appeared near the end of the State's case. The trial court had already heard substantial evidence from the State indicating that the appellant had, along with another man, attacked Jimenez. Within minutes of the arrival of

the police on the scene, they found. the appellant and the other man involved in the offense. They both had stab wounds as described by one of the witness's at the scene. The police had the two men transported to a hospital.

It seems more likely that Jimenez would want the actual people who attacked him to be charged and sentenced. We can discern no self-serving motive for Jimenez to fabricate his accusation against the appellant. This factor weighs in favor of admission.

### V. Conclusion

Having found that all of the factors weigh in favor of admission, we cannot say that the trial court abused its discretion in admitting the statement made by Jimenez. We affirm the judgment of the Court of Appeals.