Opinion filed July 11, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00196-CR

_____

## JAMES MAURICE WISE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 42nd District Court

### Taylor County, Texas

### Trial Court Cause No. 24040A

### M E M O R A N D U M   O P I N I O N

The jury convicted James Maurice Wise of aggravated robbery. Appellant pleaded true to two enhancement allegations. The trial court found that the enhancement allegations were true, and it assessed Appellant's punishment at confinement for thirty years. The trial court also found that Appellant used or

exhibited a deadly weapon in the commission of the offense. We modify and affirm.

*Background*

The indictment contained an aggravated robbery count (Count One) and a robbery count (Count Two). The aggravated robbery count alleged that, on or about November 22, 2009, Appellant, "while in the course of committing theft of property and with intent to obtain and maintain control of said property, used and exhibited a deadly weapon, to-wit: A HANDGUN" and that Appellant "did then and there intentionally and knowingly threaten and place LACY DANIEL in fear of imminent bodily injury and death by the use of said deadly weapon." The robbery count did not contain deadly weapon allegations. Otherwise, the allegations in the robbery count were the same as the allegations in the aggravated robbery count. Both counts in the indictment contained two enhancement allegations.

Appellant raised the affirmative defense of insanity. The case proceeded to trial on April 25, 2011. The State waived the robbery count. The trial ended in a mistrial. The case again proceeded to trial on July 5, 2011. The trial court instructed the jury on Appellant's insanity defense. The jury convicted Appellant of the offense of aggravated robbery.

*Issues on Appeal*

Appellant presents three issues for review. In his issues, Appellant complains of three evidentiary rulings by the trial court. In his first issue, Appellant contends that the trial court erred when it admitted the book-in photographs of Appellant and his codefendant into evidence. In his second issue, Appellant contends that the trial court erred when it admitted the transcript of a witness's testimony from the earlier trial in this case. Specifically, Appellant asserts that the prior testimony constituted hearsay and that the admission of the

testimony violated the Texas Rules of Evidence and the Confrontation Clause of the United States Constitution. In his third issue, Appellant contends that the trial court erred when it admitted extraneous offense evidence during the guilt/innocence phase of trial.

*The Evidence at Trial*

On November 22, 2009, at about 10:00 p.m., Larry Franklin was inside his house on College Street in Abilene. The Allsup's store at South 14th Street and Grand Street is behind Franklin's house. The back of Allsup's faces Franklin's backyard. Franklin heard his dog barking outside. Franklin went to the window of his house that faces Grand Street. He said that it was very dark outside. Through the window, Franklin saw a large vehicle that he believed was a van or an SUV. The vehicle was parked. Franklin saw two individuals standing outside the van. Franklin thought that the individuals were about to commit a theft. Therefore, Franklin called 9-1-1. He described the situation to the dispatcher. Franklin stayed on the phone with the dispatcher and described events as they occurred.

Franklin testified that one of the individuals walked toward Allsup's with his hands in his pockets. Franklin said that the individual was wearing dark clothing. Franklin testified that he could not tell whether the individual was "white, Hispanic or black" because "[i]t was too dark." The other individual waited outside the vehicle. Franklin could not see the front doors of Allsup's from his house. He said that the individual who approached Allsup's turned left as if to go into the front of the store. Less than a minute later, the individual came back toward the vehicle, almost in a run. Franklin said that one of the individuals opened the driver's side door of the vehicle. The dome light in the vehicle came on. At that time, Franklin said that the individual who had waited by the vehicle jumped into it and appeared to crawl into the backseat. With the help of the dome light, Franklin saw that this individual was wearing "something brightly colored," which Franklin thought was

3

either an orange or a red vest or sweater. Franklin said that the individual who had approached Allsup's got into the driver's seat and then drove away. The driver did not turn on the vehicle's lights until he was at least a block away from the scene.

During the night of November 22, 2009, Lacy Daniel worked her shift at Allsup's. She testified that, at about 10:00 p.m., a man held her up at gunpoint. She said that the man was wearing what she believed was a black leather jacket. The man was also wearing something that covered his face from the nose down. Daniel said that he had "something pulled over his face to the bridge of his nose," which Daniel thought was a turtleneck sweater, and that he had "something over his head like a toboggan." The man said, "Give me your money. I'm serious." Daniel said that the man held a silver handgun on her. The man threw a ziplock bag down onto the counter. Daniel put money into the bag. She turned around to get more money. At that time, the man ran out of Allsup's. Daniel locked the door and then called 9-1-1.

Following Daniel's testimony, the State introduced into evidence a recording of the 9-1-1 call that Franklin made and a recording of a 9-1-1 call that a representative of the alarm company for Allsup's made. The recordings were played for the jury. Due to a technical problem, Daniel's 9-1-1 call was not recorded.

Abilene Police Officers Christopher Bisbee and Gabe Thompson worked as partners the night of November 22, 2009. They were dispatched to a robbery call at Allsup's on South 14th Street. As they traveled to Allsup's, Officer Thompson observed a van that fit the description of the vehicle that was used in connection with the robbery. The van was near the intersection of South 14th Street and Amarillo Street. Officer Bisbee turned the patrol car around and followed the van. The driver of the van pulled into a driveway at 1041 South 15th Street. Officer

4

Bisbee activated his overhead lights. Officer Anthony Joeris also responded to the scene.

The officers directed the van's driver and passenger to sit on the ground at the rear of the van. The officers determined that Appellant was the driver and that Jerrod Flores was the passenger. The officers saw a brown leather jacket between the two front seats of the van. They found a black shirt or cloth under the jacket. The officers also found a ziplock bag that contained money under the front passenger seat. They also found a pistol under the driver's side floor mat.

The officers arrested Appellant and Flores and transported them to the law enforcement center. Book-in photographs of Appellant and Flores were taken. Over Appellant's objection, the trial court admitted the book-in photos into evidence. Appellant was wearing a short-sleeved T-shirt in his photo. Flores was wearing a University of Texas hoodie in his photo.

Flores testified in the earlier trial of this case. Over Appellant's objections, the trial court ruled that Flores's testimony from the earlier trial was admissible. The parties presented parts of Flores's testimony to the jury.

Flores testified that Appellant was married to Flores's aunt, Marla Wise. Flores said that Marla and Appellant lived at 1041 South 15th Street and that Marla owned the van in question. Flores said that, on November 22, 2009, he and his wife, Rochelle Ramirez, were walking to Marla's house. As they walked, Appellant drove up in Marla's van. Appellant told Flores that he was going to buy "weed." At that time, Flores was wearing a University of Texas hoodie. Flores got into the van with Appellant. Appellant drove away. Ramirez walked to Marla's house. Flores testified that Appellant parked the van. Appellant told Flores that he was going to meet a guy so that he could get some marihuana. Flores testified that Appellant walked away from the van. Flores said that he stayed at the van. Flores said that Appellant ran back to the van, hopped in it, and

5

drove away. The next thing Flores knew, the police pulled them over. Flores said that he believed something had gone wrong with the drug deal. Flores said that Appellant threw him something and that he put it under the seat. Flores saw Appellant put something on the floor. Flores testified that he did not know that Appellant was going to rob a store. Flores said that he did not ask Appellant what had happened.

Flores testified that he had seen Appellant about two days before the offense. Flores said that, at that time, Appellant was "like spaced out like he didn't know what was going on" and was talking to himself.

Appellant's counsel cross-examined Flores at the earlier trial. During that cross-examination, Flores said that Appellant took medications for some kind of mental problem. According to Flores, on the night of the incident, Appellant acted "[s]omewhat" in the same way that he had acted two days earlier. Flores said that he had seen Appellant talk to himself on numerous occasions. The State rested after the conclusion of Flores's testimony.

Appellant presented John D. Crowley, M.D., a psychiatrist, as a witness. The record shows that, upon a motion by Appellant, the trial court appointed Dr. Crowley to examine him. Dr. Crowley testified that he had examined Appellant a few times. Dr. Crowley first saw Appellant in April 2010. At that time, Dr. Crowley diagnosed Appellant with "major depression with psychotic features." Dr. Crowley explained that psychotic features consist of either auditory or visual hallucinations or fixed false beliefs known as delusions. Appellant told Dr. Crowley that he heard voices even though no one was actually present and talking to him. Dr. Crowley was aware that Appellant had received treatment for his mental condition at the Betty Hardwick Center in Abilene and that Appellant took prescription medications for his condition. Appellant told Dr. Crowley that he had not taken his medications for some time before the date he was arrested in

6

this case. Dr. Crowley said that a patient's hallucinations may worsen if the patient does not take his medication.

On cross-examination, Dr. Crowley testified that, in his opinion, Appellant was sane at the time of the alleged offense in this case. Dr. Crowley testified that Appellant knew right from wrong and that Appellant would have known that his conduct was wrong.

Katy Young was a counselor and a case manager at the Betty Hardwick Center. She said that Appellant was one of her clients. She first saw Appellant in August 2009. Young said that Appellant complained of hearing voices. She said that Appellant took prescription medications for treatment of his mental condition. Young said that Appellant attempted to get his medications refilled in November 2009 but that he was arrested before he got the refills.

Marla testified that Appellant took Wellbutrin and Zyprexa for his mental condition but that his medications were stolen about two weeks before he was arrested in this case. Marla said that Appellant had an appointment set up for the beginning of December to obtain more medicine. Marla said that she noticed changes in Appellant during the two-week period that he did not take his medications. She said that Appellant moped around, seemed to talk to himself, and complained about hearing voices. She said that Appellant's condition worsened in the three days leading up to his arrest. She said that, during Appellant's lifetime, he had been hospitalized a number of times for treatment of his mental condition.

Appellant testified that he heard the voice of "Brett," a man Appellant had known in the past. Brett was deceased. Appellant said that Brett talked to him and that he sometimes saw Brett. Appellant testified that he took medications for treatment of his condition. The medications minimized the number of times that Appellant heard Brett's voice. Appellant said that he had not taken his medications for two weeks when he was arrested in this case. He said that his

7

medications had been stolen in Dallas.  Appellant testified that he had scheduled an appointment for the first of December to refill his medications.

Appellant said that, after being without his medications for a week, the "voices" started bothering him, he could not eat or sleep, and he did not want to be around anyone.  He said that Brett told him to rob a store so that he would have money to buy his medications.  Appellant said that Brett told him to go into the store, ask for the money, and then leave the store.  Appellant said that he went into the store and robbed it.  He remembered going into the store with the gun and leaving the store with the money.  Appellant testified that he did not know robbing Allsup's was wrong but, instead, believed that it was the right thing to do.  He said that he just did what Brett told him to do.

Appellant testified that he wore a brown leather jacket when he robbed the store.  He said that he drove home after he committed the robbery.  Appellant said that he was not in his right state of mind that night.  He said that his mind got better after he got back on his medications.

During cross-examination, Appellant testified that Brett "passed away" twenty-three years ago.  The prosecutor then asked Appellant, "Isn't it true you murdered him?"  Appellant's counsel stated, "Objection."  The trial court overruled the objection.  Appellant then testified that he murdered Brett because Brett tried to rape him.  Appellant testified that he was convicted for the murder of Brett in 1989 and that he served twenty years in prison for the offense.

*Admissibility of Evidence Standard of Review*

In each of his three issues, Appellant complains that the trial court improperly admitted evidence.  We review a trial court's decision to admit evidence under an abuse of discretion standard and will not reverse that decision absent a clear abuse of discretion.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005).

8

A trial court abuses its discretion only when its admissibility decision lies outside the zone of reasonable disagreement. *Apolinar*, 155 S.W.3d at 186.

*Book-in Photographs*

In his first issue, Appellant contends that the trial court erred when it admitted the book-in photographs of Flores and him. The State sought to introduce the photographs during Officer Bisbee's testimony. Officer Bisbee identified the photographs, which were marked as State's Exhibit Nos. 18 and 19. State's Exhibit No. 18 was the photograph of Appellant, and State's Exhibit No.19 was the photograph of Flores. Officer Bisbee said that State's Exhibit No. 18 was a picture of the driver of the van and that State's Exhibit No. 19 was a picture of the passenger. The State offered the photographs. Appellant's counsel objected to the admission of the photographs on the ground that they were prejudicial. The trial court overruled the objection and admitted the photographs. The State published them to the jury.

On appeal, Appellant contends that the trial court abused its discretion when it admitted the photographs because they were not relevant and because they were more prejudicial than probative. Appellant did not raise a relevancy objection at trial. To preserve error for appellate review, the complaining party must make a timely, specific objection in the trial court and obtain a ruling on the objection. TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Therefore, Appellant did not preserve his relevancy complaint for review.

We note that the book-in photographs were relevant to prove that Appellant entered Allsup's and robbed Daniel at gunpoint. Franklin testified that the individual who walked toward Allsup's wore dark clothing and that the person who remained at the vehicle wore an orange or red vest or sweater. Franklin also testified that the individual who approached Allsup's drove away after he returned

9

to the vehicle. The officers found a brown leather jacket in the van. The evidence showed that Appellant took off the jacket after he committed the robbery. Appellant was wearing a T-shirt in his book-in photograph. Flores was wearing a University of Texas hoodie in his book-in photograph. Officer Bisbee testified that State's Exhibit No. 18, which was the picture of Appellant, depicted the driver of the van. Thus, the book-in photographs tended to show that Appellant entered Allsup's.

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly prejudicial when it has an undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921. In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

The book-in photograph of Appellant consisted of a front-view of him. The photograph showed him standing up and wearing a light-colored T-shirt. The book-in photograph of Flores consisted of a front view of him. The photograph showed him standing up and wearing a University of Texas hoodie. The photographs were relevant to prove Appellant's identity and to prove that he entered Allsup's. The photographs were relatively innocuous pictures of two individuals who had recently been arrested. Nothing depicted in the photographs was unfairly prejudicial. The trial court could have reasonably concluded that the

probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. Appellant's first issue is overruled.

*Prior Testimony*

In his second issue, Appellant contends that Flores's testimony from the earlier trial constituted inadmissible hearsay under the Texas Rules of Evidence and the Confrontation Clause of the United States Constitution. Rule 804 of the Texas Rules of Evidence creates certain hearsay exceptions when the declarant is unavailable as a witness. TEX. R. EVID. 804. A declarant is unavailable if he "is absent from the hearing and the proponent of [his] statement has been unable to procure [his] attendance or testimony by process or other reasonable means." TEX. R. EVID. 804(a)(5). Under Rule 804(b)(1), an unavailable declarant's testimony from "another hearing of the same or a different proceeding" is not excludable as hearsay "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

The Confrontation Clause of the Sixth Amendment provides a right in both federal and state prosecutions to confront and cross-examine adverse witnesses. U.S. CONST. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 406 (1965); *Woodall v. State*, 336 S.W.3d 634, 641 (Tex. Crim. App. 2011). The Confrontation Clause bars the admission of a witness's prior testimony unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *Render*, 347 S.W.3d at 917.

Appellant contends that the State did not meet its burden to establish that Flores was unavailable as a witness. To establish that a witness is unavailable under Rule 804(a)(5), the proponent of the testimony must demonstrate that a good-faith effort was made before trial to locate and present the witness. *Reed v. State*, 312 S.W.3d 682, 685 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

11

Similarly, "unavailability" for purposes of the Confrontation Clause is established if the prosecution made a good-faith effort to obtain the witness's presence at trial. *Reed*, 312 S.W.3d at 685; *Ledbetter v. State*, 49 S.W.3d 588, 592 (Tex. App.—Amarillo 2001, pet. ref'd). For both Rule 804(a)(5) and the Confrontation Clause, we review a trial court's ruling—on whether the effort to obtain a witness was sufficient—for an abuse of discretion. *Reed*, 312 S.W.3d at 685; *Ledbetter*, 49 S.W.3d at 592.

Deris Hutcheson, an investigator for the Taylor County District Attorney's Office, testified about the prosecution's efforts to procure Flores's attendance as a witness at trial. Investigator Hutcheson said that he served Flores before the earlier trial. On June 16, 2011, Investigator Hutcheson obtained a subpoena for Flores for the July 5, 2011 trial setting. Investigator Hutcheson testified that investigators from the district attorney's office attempted to serve Flores several times at his last known address but were unable to serve him there. Investigator Hutcheson knew that Flores was represented by a lawyer in a different aggravated robbery case. Investigator Hutcheson contacted Flores's lawyer and told her that he needed to locate Flores. Flores's lawyer told Investigator Hutcheson that she would find Flores. Investigator Hutcheson did not hear back from Flores's lawyer. Investigator Hutcheson called Flores's lawyer again, but there was no answer. Investigator Hutcheson left a message on an answering machine. Flores's lawyer did not return the call. Investigator Hutcheson testified that he also contacted Flores's bail bondsman. Investigator Hutcheson told the bondsman that he needed to serve a subpoena on Flores. The bondsman told Investigator Hutcheson that he would tell Flores to contact Investigator Hutcheson. Flores did not contact Investigator Hutcheson. So, Investigator Hutcheson again contacted the bondsman. The bondsman told Investigator Hutcheson that Appellant would be in the bond company's office the Friday before the trial setting in this case. The bondsman

12

said that he would call Investigator Hutcheson when Flores arrived at the office and that, then, Investigator Hutcheson could go to the office to serve Flores. Investigator Hutcheson testified that he never heard back from the bondsman. Investigator Hutcheson said that investigators at the district attorney's office also contacted some of Flores's family members in an effort to locate Flores.

After Investigator Hutcheson testified, the trial court ruled that the State had met its burden to show that Flores was unavailable as a witness. The trial court found that the State made a diligent effort to procure Flores's attendance as a witness. Investigator Hutcheson's testimony showed that the prosecution made numerous and repeated efforts to serve Flores with the subpoena. Based on that testimony, the trial court could have reasonably concluded that the State made a good-faith effort to locate and present Flores as a witness. Therefore, we conclude that the trial court did not abuse its discretion by ruling that Flores was unavailable for the purposes of Rule 804 and the Confrontation Clause.

Appellant also contends that the State failed to show that he had "an opportunity and similar motive" to cross-examine Flores at the previous trial. The record shows that Appellant's counsel had the opportunity, and exercised the opportunity, to cross-examine Flores at the earlier trial. During cross-examination of Flores at the earlier trial, Appellant's counsel attempted to develop facts to support Appellant's insanity defense. As summarized above, Appellant's counsel asked Flores questions about Appellant's mental state before and on the date of the incident at Allsup's. Flores testified that he had seen Appellant talk to himself on numerous occasions.

Appellant asserts that he did not have a similar motive to cross-examine Flores at the earlier trial. Appellant's counsel informed the trial court that he had not heard the 911 tapes before the current trial. Appellant's counsel stated, "For the record Judge, when [Franklin], on the 911 tape, describes the person that went

13

into the Allsup's and robbed it as being a Hispanic male, and I didn't have that information so I didn't cross-examine [Flores]." Appellant is African-American, and Flores is Hispanic.

Franklin testified that he could not tell whether the individual who went into Allsup's was "white, Hispanic or black" because "[i]t was too dark." The overwhelming evidence established that Appellant entered Allsup's and that Flores remained at the van during the robbery. In the earlier trial, Flores testified that he stayed at the van when Appellant walked away from it. An attempt by Appellant's counsel to establish, through cross-examination of Flores, that Flores and not Appellant entered Allsup's and committed the robbery would have been futile. Based on the evidence, the trial court could have reasonably concluded that Appellant had an opportunity and similar motive to develop Flores's testimony by cross-examination at the earlier trial. The trial court did not abuse its discretion when it admitted Flores's former testimony. Appellant's second issue is overruled.

*Evidence of Prior Conviction*

In his third issue, Appellant contends that the trial court abused its discretion when, during the guilt/innocence phase, it admitted evidence of his 1989 conviction for the murder of Brett. In his direct testimony, Appellant said that he heard Brett's voice even though Brett was not there and that Brett told him to rob the store. During the prosecution's cross-examination of Appellant, the following exchange took place:

Q. Who is Brett, or who was he?

A. He was a man from my past.

Q. Yes, he was. Isn't it true that he was a man from 21 years in your past?

A. More than 21 years ago.

14

Q. But you haven't seen him in at least 22 years; is that correct?

A. 23.

Q. Why have you not seen him since then?

A. Because he passed away.

Q. Passed away. Isn't it true you murdered him?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: Q. Isn't it true you murdered Brett?

A. Yes, sir.

Q. And isn't it true you were convicted of that in 1989?

A. He tried to rape me.

Q. Isn't it true that you were convicted of his murder in 1989?

[DEFENSE COUNSEL]: Objection.

A. (BY THE WITNESS): Yes, sir.

THE COURT: Overruled.

[PROSECUTOR]: Q. And isn't it true you were sentenced to 20 years in prison?

[DEFENSE COUNSEL]: Objection, Your Honor. Punishment is not relevant.

THE COURT: Overruled.

A. (BY THE WITNESS): I took the 20 years because --

15

Q. I just asked you a question. You can answer your counsel's when I get through. Weren't you sentenced to 20 years in prison?

A. Yes, sir.

Q. And did you serve 20 years?

A. Yes.

Q. That would have meant you were released in 2009?

A. 2008.

Before trial, Appellant filed a motion to suppress in which he asserted that his 1989 murder conviction was inadmissible for impeachment purposes under Rule 609 of the Rules of Evidence. TEX. R. EVID. 609. The trial court denied the motion. Rule 609(a) provides that, for impeachment purposes, evidence that a witness has been convicted of a crime that was a felony or involved moral turpitude is admissible if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect. Rule 609(b) establishes a time limit. Rule 609(b) provides that, if ten years have passed since the date of conviction or the date of release of the witness from confinement, whichever is later, the conviction is not admissible unless the trial court determines that the probative value of the conviction substantially outweighs its prejudicial effect. Appellant was released from prison for the murder conviction in 2008. Thus, his prior conviction fell well within the ten-year range in Rule 609(b).

Courts use a nonexclusive list of factors to weigh the probative value of a conviction against its prejudicial effect. *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992). The factors include (1) the impeachment value of the prior crime, (2) the temporal proximity of the prior crime relative to the charged offense

and the witness's subsequent history, (3) the similarity between the prior crime and the charged offense, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. *Id.* The proponent seeking to introduce evidence of a conviction under Rule 609 has the burden to demonstrate that the probative value of the conviction outweighs its prejudicial effect. *Id.*

Appellant testified that Brett told him to rob the store. Appellant said that he thought he was doing the right thing by robbing the store. Before the prosecutor asked Appellant whether he murdered Brett, Appellant's testimony left a false impression with the jury that Brett "passed away," when, in fact, Appellant killed him. Evidence of Appellant's murder conviction removed the false impression. While witnesses other than Appellant testified that Appellant complained of hearing voices, Appellant was the only witness who testified about Brett. Appellant's testimony was critical to his insanity defense; therefore, his credibility was extremely important to the jury's consideration of his defense. Evidence that Appellant murdered Brett was relevant to the jury's determination of Appellant's insanity defense and to the issue of Appellant's credibility. After considering all the factors outlined in *Theus*, we conclude that the probative value of the evidence of Appellant's conviction outweighed its prejudicial effect and that, therefore, evidence of the conviction was admissible under Rule 609. The trial court did not abuse its discretion when it admitted evidence of Appellant's conviction. Appellant's third issue is overruled.

### *The Trial Court's Judgment*

The judgment of the trial court erroneously reflects "N/A" with respect to the enhancement pleas and findings. Additionally, although the first page of the judgment correctly reflects that the trial court assessed Appellant's punishment, the second page of the judgment erroneously reflects that the jury assessed Appellant's punishment. The record shows that Appellant pleaded true to both enhancement

allegations, that the trial court found both enhancement allegations to be true, that the trial court assessed Appellant's punishment, and that Appellant was sentenced as a habitual offender under TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2012).

*This Court's Ruling*

We modify the judgment of the trial court to reflect that Appellant pleaded "TRUE" to the first and second enhancement paragraphs and that the trial court found the first and second enhancement paragraphs to be "TRUE." We modify the second page of the judgment to reflect that the trial court assessed Appellant's punishment. As modified, we affirm.


TERRY McCALL

JUSTICE


July 11, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.