ACCEPTED
01-15-00324-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/13/2015 11:29:36 AM
CHRISTOPHER PRINE
CLERK

NO.    01-15-00324 - CR

_____

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
7/13/2015 11:29:36 AM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS
# FOR THE
# FIRST SUPREME JUDICIAL DISTRICT OF TEXAS
# AT HOUSTON

_____

## ASTIN CHAVERS CLARK
**Appellant**

## VS.

## THE STATE OF TEXAS,
**Appellee**

_____

Appeal in Cause Number 1296861
In the 248th District Court
of Harris County, Texas

_____

## BRIEF FOR APPELLANT

_____

**ALLISON SECREST**
State Bar No. 24054622
ALLISON SECREST, P.C.
808 Travis Street, 24th Floor
Houston, Texas  77002
(713) 222-1212
(713) 650-1602 (FAX)

Attorney in Charge for Appellant,
**ASTIN CHAVERS CLARK**

**NAMES OF ALL PARTIES**

JUDGE:                          Honorable Katherine Cabaniss
                                248th Judicial District Court

PROSECUTOR:                     Andrea Moseley

DEFENSE ATTORNEY:               Kyle B. Johnson  (Trial)
                                929 Preston, Suite 200
                                Houston, Texas 77002

                                Allison Secrest  (Appeal)
                                Allison Secrest, P.C.
                                808 Travis Street, 24th Floor
                                Houston, Texas  77002

## TABLE OF CONTENTS

**Page**

NAME OF ALL PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

TABLEOF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, v

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT OF ERROR. . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . .. . . . . . . . . . . . . 3

    The trial court committed reversible error by allowing the prosecutor, over a timely specific objection by defense counsel, to introduce evidence of the appellant's failed polygraph results and statements made during custodial interrogation obtained without *Miranda* warnings, in violation of appellant's Fifth Amendment rights against self-incrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT OF ERROR RESTATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

    (A) Overview of the testimony regarding the objected to exhibits . . . . . . . .11

    (B) Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    (C) Fifth Amendment right to be free from compelled self-incrimination . . 13

    (D) Interrogation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .20

# INDEX OF AUTHORITIES

**PAGE**

## CASES

*Alford v. State*,
358 S.W.3d 646 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . . . . . . .15, 16

*Apolinar v. State*,
155 S.W.3d 184 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . .13

*Black v. Romano*,
471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985) . . . . . . . . . . . . . . . . . .13

*Chapman v. State*,
115 S.W.3d 1 (Tex. Crim. App. 2003). . . . . . . . . . . . . . . . . .. . . . . . . . 13

*Dansby v. State*,
398 SW.3d 233 (Tex. Crim. App. 2013) . . . . . . . . . SW.3d. . . . . . .14, 15

*Ex parte Renfro*,
999 S.W.2d 557 (Tex. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Gagnon v. Scarpelli*,
411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). . . . . . . . . . . . . . . .13, 14

*Hailey v. State*,
413 S.W.3d 457 (Tex. App. –Ft. Worth 2012, pet ref'd). . . . . . . . . . . . . . .16

*Leonard v. State*,
385 S.W.3d 570 (Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Minnesota v. Murphy*,
465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed. 409 (1984). . . . . . . . . . .. . . .13, 14

*Miranda v. Arizona*,
384 U.S. 436,  384 U.S. 436, 86 S.Ct.1602 (1966). . . . . . . . . . . . . . . . 5, 11, 15

iv

*Moore v. State*,
    605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.]) 1980. . . . . . . . . . . . . .13

*Rhode Island v. Innis*,
    446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) . . . . . . . . . . . . . . 15, 16

*State of Texas v. Cruz*,
    No. PD-0082-14, 2015 WL 2236982 (Tex. Crim. App. 2015) (published May
    13, 2015.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Tennard v. State*,
    802 S.W.2d 678, 683 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . .14

## CONSTITUTIONS, STATUTES AND TREATISES

U.S. Const. amend. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 11, 14,17

Tex. Code. Crim. Proc., art. 38.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tex. Code. Crim. Proc.,art. 42.12, § 5(b) . . . . . . . . . . . . . . . . . . . . . . . . .13

Tex. Penal Code Ann. § 30.02(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

NO. 01-15-00324 - CR

IN THE COURT OF APPEALS
FOR THE
FIRST SUPREME JUDICIAL DISTRICT OF TEXAS
AT HOUSTON

ASTIN CHAVERS CLARK,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

TO THE COURT OF APPEALS FOR THE FIRST SUPREME JUDICIAL DISTRICT OF TEXAS:

**PRELIMINARY STATEMENT**

This is an appeal from the conviction of the offense of burglary of a habitation, proscribed by Tex. Penal Code § 30.02(d). The appellant was indicted on May 17, 2011. (CR 13). On November 16, 2011, a plea of "guilty" to the charges was entered and the case was reset to November 29, 2011 for sentencing. (CR 28). The trial court accepted the plea and an Order of Deferred Adjudication was entered on November 29, 2011. (CR 36). The appellant was placed on a 6 year deferred adjudication and was required to register as a sex offender (CR 36, 32). On May 18, 2012, a Motion to Adjudicate Guilt and Order was signed. (CR 67). The appellant was remanded to custody. (CR 69). The trial court ordered the appellant to serve 15

1

days in the Harris County Jail as a condition of probation and the State dismissed the Motion to Adjudicate Guilt on August 6, 2012. (CR 72-73).[1] Another Motion to Adjudicate Guilt and Order was signed on October 7, 2014. (CR 100-103). The State filed a 1st Amended Motion to Adjudicated Guilt and Order which was signed on February 2, 2015. (CR 108-111). On March 23, 2015, an Adjudication Hearing was held before the Honorable Katherine Cabaniss. (RR). The appellant plead "true" to most of the allegations in the Motion to Adjudicate Guilt.[2] At the conclusion of the hearing, the judge accepted the appellant's plea of true, adjudicated him guilty and assessed a punishment of 25 years TDCJ. (CR 117-18).[3] Appellant timely filed his written notice of appeal on the same date. (CR 121).

---

[1] Two additional motions to adjudicate guilt were filed whereupon the appellant was remanded to custody but was not adjudicated. The State dismissed the motions to adjudicate after the trial court amended the appellant's conditions of probation. (CR).

[2] The appellant plead true to the allegations in paragraphs one through fourteen and seventeen through nineteen in the Motion to Adjudicate. (RR 7-16). The appellant pleaded not true to the allegations in paragraph fifteen, sixteen, twenty and twenty-one. (RR 13-14).

[3] The brief was due June 19, 2015 but an order was entered extending the time for filing to July 13, 2015.

## POINT OF ERROR

**The trial court committed reversible error by allowing the prosecutor, over a timely specific objection by defense counsel, to introduce evidence of the appellant's failed polygraph results and statements made during custodial interrogation obtained without *Miranda* warnings, in violation of appellant's Fifth Amendment rights against self-incrimination.**

## STATEMENT OF FACTS

In pertinent part, the grand jury alleged that:

on or about February 24, 2011, [the defendant] did then and there unlawfully, without the effective consent of the owner, namely, without any consent of any kind, intentionally and knowingly enter a habitation owned by NATHALIE GONZALEZ, a person having a greater right to possession of the habitation than the Defendant, and commit and attempt to commit the felony offense of INDECENCY WITH A CHILD.

(CR 13).[4] On November 16, 2011, the appellant appeared with counsel and entered a plea of "guilty" to the allegation contained in the indictment. (CR 30). The trial court accepted the plea, withheld a finding of guilt, and reset the matter for a sentencing hearing to be conducted on November 29, 2011. (CR 36). On that date, the appellant was placed on a six year deferred adjudication and was required to register as a sex offender. (*Id.*). Subsequently, three separate Motions to Adjudicate Guilt were filed after November 29, 2011 but the appellant was not adjudicated.

---

[4]Tex. Penal Code § 30.02(d) classifies the offense as a first degree felony if "(1) the premises are a habitation; and (2) any party to the offense entered the habitation with intent to commit a felony other than felony theft or committed or attempted to commit a felony other than felony theft.

Another Motion to Adjudicate Guilt and Order was signed on October 7, 2014. (CR 100-103). The State filed a 1st Amended Motion to Adjudicate Guilt and Order which was signed on February 2, 2015. (CR 108-111). On March 23, 2015 an Adjudication Hearing was held before the Honorable Katherine Cabaniss. (RR). The defense waived the reading of the motion to adjudicate and the appellant plead true to the allegations that he violated the terms and conditions of the community supervision. (RR 6). After a short break, the appellant stated that there were some allegations that he did not feel comfortable pleading true to. (RR 7). The judge read each paragraph of the motion to adjudicate, allowing the appellant to plead true or not true. (RR 7 -16). The appellant plead true to the allegations in paragraphs one through fourteen and seventeen through nineteen in the Motion to Adjudicate. (RR 7-16). The appellant pleaded not true to the allegations in paragraph fifteen, sixteen, twenty and twenty-one. (RR 13-14).

The State called Ronald Russell, a licensed state polygraph examiner, who testified that he had been conducting polygraph examinations for eleven years, nine of which were for Harris County. (RR 23-24). He stated that he primarily worked with probationers who were on the sex offender caseload with the purpose of determining a probationer's compliance with the conditions of probation. (*Id.*). Mr. Russell testified that he conducted a polygraph examination of the appellant on two

4

occasions. (RR 24). The State offered three exhibits into evidence. (RR 26). Mr. Russell stated that State's exhibit number one was a questionnaire that was filed out by the appellant on October 3, 2015. (RR 25). The second exhibit was a written statement by the appellant, dated October 3, 2015, and State's exhibit three was a video interview of the appellant taken by Mr. Russell the same day. (*Id.*). He admitted that his procedure is to give the probationer's the questionnaire before he conducts a polygraph examination. (*Id.*). He stated that he had the appellant complete a written statement after he completed the polygraph examination and that the video interview contained a pre-polygraph interview, as well as the polygraph examination. (RR 26).

Defense counsel took Mr. Russell on voir dire. (*Id.*). He asked if his client had to take the polygraph tests as a requirement of probation and that if he refused, if the refusal would be a violation of probation that would send him to prison. (RR 27). Mr. Russell agreed. (*Id.*). When asked if Mr. Russell *Mirandized*[5] his client, Mr. Russell stated that he did not read Mr. Clark his *Miranda* rights, because he is not a peace officer. (*Id.*). Defense counsel objected, "to the admission of this as a violation of his *Miranda* rights, his rights to self-incrimination." (*Id.*). Counsel asked that the test results not be admitted into evidence stating, "[i]t's our position that given the

---

[5]*Miranda v. Arizona* 384 U.S. 436, 384 U.S. 436, 86 S.Ct.1602 (1966).

mandatory nature of this polygraph test, it's tantamount to a custodial statement." (*Id*.). The objection was overruled and State's exhibits one through three were admitted into evidence. (*Id*.).

The prosecutor stated that she did not plan to offer any evidence of the results of the polygraph but did wish to rely on the pre-polygraph interview regarding the admissions that were before the court. (RR 28). She questioned Mr. Russell further, and he stated that he reported the polygraph examination results to the appellant's probation officer and to a sex offender therapist, Mr. Raymond Johnson. (*Id*.). On cross examination, defense counsel asked Mr. Russell if he was surprised with how candid the appellant was in his honest answers and if he even volunteered information not asked. (*Id*.). He admitted that appellant made numerous admissions to violations and that was very unusual. (*Id*.).

The prosecutor then called Mr. Raymond Johnson, a professional counselor who was licensed as a sex offender treatment provider. (RR 32). He testified that he was responsible for treating the appellant and that he received information regarding the appellant's October 3, 2014, polygraph examination and interview. (RR 33). The prosecutor asked, "is it a condition of him staying in your treatment that he go and get these polygraph examinations?", and in response, he stated,

We want to know whether or not the person is compliant with both the probationary rules as well as the treatment rules, whether or not there are additional behaviors that are in line or not in line with the treatment. And the way we would know that is whether or not they comply with the polygraph. (RR 33-34).

Mr. Johnson stated that the appellant had initially made some progress but he did not allow him to return to treatment and instructed him to go see his probation officer after he learned the results of the polygraph. (RR 34). He testified that he did not review the recorded interview but merely read the polygraph results. (*Id*.). The prosecutor asked if he recalled the defendant admitting that he had masturbated in public, had contact with minors, and admitted to peeping into someone's window and watching people. (*Id*.). He stated that he learned that from reading the polygraph results and that the contract states, "that you must obey all supervision rules and contract rules. Some behavior might be somewhat suspect, but unless they're law violations, just behavioral issues, we try to deal with them in therapy." (RR 35-36). He added that they report "law" violations to the probation officer and suspend the defendant's from probation so he reported this to Mariselas Contreras, the appellant's probation officer, because he considered exposing oneself in public to be a "law" violation. (*Id*.).

On cross examination, defense counsel established that the appellant attended the therapy sessions regularly and participated as required, and asked if answering the

7

questions honestly in the polygraph examination was considered making progress in the treatment program. (RR 39). Mr. Johnson stated that being honest about behavior and making disclosures would be considered "encouraging." (*Id*.). Defense counsel asked if he was aware the Mr. Clark had been sexually abused in the past. (*Id*.). Mr. Johnson stated that he knew that Mr. Clark was uncomfortable living with his surrogate parent and that he felt that he had been psychologically mistreated. (*Id*.). He admitted that some people exhibit compulsions and many sex offenders have no control over their behaviors. (*Id.*).

The State thereafter played State's exhibit number three, the pre-polygraph interview and rested. (RR 42). The defense rested without calling any witnesses. (RR 43). The court found the allegations in the motion to adjudicate to be true as to all of the paragraphs in the motion. (RR 44-45).

The State called Nathalie Gonzalez during the punishment phase. (RR 44). She testified that she attended the University of Houston and lived in a dormitory on campus at a in 2011. (RR 45). She stated that someone entered her room around 3:00 am and she awoke to someone feeling her breasts. (RR 46). When she started yelling, the man said that he thought he was in his girlfriend's room and got up and left. (*Id*.). She stated that as a result of the incident, she does not feel safe and that

8

she cannot sleep unless she checks the locks on the doors. (*Id*.). After a very brief cross examination by defense counsel, the State rested. (RR 49).

The defense called Ms. Freda Clark to testify. (*Id*.). She stated that the appellant was her nephew and identified the appellant's uncle, Pastor Jonathan Clark, and Pastor Mosely Jones, the senior pastor of the church that appellant went to, as being in the front row of the gallery. (RR 50). She testified that Mr. Clark's mother was not around much when he was an infant but that she would sometimes take him for periods of time and they would not know where he was. (RR 52). She stated that his mother had issues with marijuana and they did not know who Mr. Clark's father was. (*Id*.). When Mr. Clark was about four years old, he became a ward of the State and was taken into CPS custody after they discovered that he had anal genital herpes and had been sexually assaulted. (RR 53). She further testified that her own children were taken away, for a brief time, while they conducted an investigation. (*Id*.). Because no one in her household had a sexually transmitted disease, except Mr. Clark, they believed that he had been sexually abused when he was taken out of the house by his mother. (*Id*.). She stated that the appellant attended church regularly and that she was shocked after seeing the video recorded interview of her nephew. (RR 53-54). She added that he was a good kid and had lived a hard life, had always searched for the love and affection of his mother but she wouldn't give it to him.

9

(*Id*.). After a brief cross examination from the prosecutor, the defense rested. (RR 57). The prosecutor waived the right to open and reserved the right to make a closing argument. (*Id*.).

The defense made a closing argument and asked the court to consider his client's sexual abuse at a very young age, "emotional and mental issues that somehow manifest in compulsively acting out sexually." (*Id*.). He argued that the appellant was not a rapist or pedophile but someone who "exposes himself, masturbates, but no indication he's ever going to physically hurt anyone...it's just irresistible impulses that he can't resist." (*Id*.). Defense counsel urged the court not to punish someone for being sick and that his client wanted help and to consider the lower end of the punishment range. (RR 58-59).

The prosecutor argued that the appellant was given the opportunity to get help while on probation and continued to violate the law and that there was "nothing this Court can do to fix whatever it is that's wrong with Astin Clark." (RR 59-60). The prosecutor asked the court to sentence the defendant to 40 years in prison. (*Id*.). After hearing arguments of counsel, the trial court thereafter assessed punishment at confinement for a period of (25) years.

## POINT OF ERROR RESTATED

**The trial court committed reversible error by allowing the prosecutor, over a timely specific objection by defense counsel, to introduce evidence of the appellant's failed polygraph results and statements made during custodial interrogation obtained without *Miranda* warnings, in violation of appellant's Fifth Amendment rights against self-incrimination.**

## ARGUMENT AND AUTHORITIES

### (A) Overview of the testimony regarding the objected to exhibits

During the adjudication hearing, counsel for Mr. Clark objected to the admission of the failed polygraph examination and other exhibits offered by the prosecution, as a violation of Mr. Clark's *Miranda* rights and rights against self-incriminating, arguing that because these tests were mandatory in nature they amounted to an involuntary custodial statement obtained without *Miranda* warnings. (RR 27). The objection was overruled and all of the State's exhibits were admitted into evidence. (*Id*.).

The prosecutor stated to the trial court with regards to State's exhibit number 3 that she intended to offer the first hour and nine minutes of the pre-polygraph interview recording and did not intend to offer or publish the last thirty minutes of the polygraph examination. (*Id*.). Rather than play the recording, Judge Cabaniss asked if the prosecutor could get into evidence the content of the video recording through

11

the testimony of the witnesses. (RR 29). The prosecutor introduced evidence that the appellant made several admissions to violating the terms of his the community supervision during this pre-polygraph interview, as well as in his written statements, and in the questionnaire that was obtained from him during his mandatory meeting with the polygraph examiner. (RR 29-38).

Prior to objecting to the admission of the exhibits, counsel for Mr. Clark took Mr. Russell on voir dire and asked, "[i]s it your understanding (sic, as) it was Mr. Clark's – it was a requirement of his probation that he take these polygraph tests?" (RR 26-27). Mr. Russell stated that it was, and when asked if a refusal to take the tests could be a violation of his probation, Mr. Russell stated that that was his understanding, and agreed that this could lead to Mr. Clark going to prison. (RR 27). Mr. Russell admitted that he did not *Mirandize* Mr. Clark before the tests, saying that he did not do so because he is "not a peace officer." (*Id.*).

**(B) Standard of Review**

"The central issue to be determined in reviewing a trial court's exercise of discretion in a community supervision revocation case is whether the defendant was afforded due process of law." *Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012). "In particular, where, as in Texas, the fact finder, if it finds a violation of the conditions of probation, has discretion to continue the probation, the

12

probationer 'is entitled [by due process] to an opportunity to show not only that he did not violate the conditions [of his probation], but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition.'" (citing to *Black v. Romano*, 471 U.S. 606, 612 (1985)).[6] A trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement. *Apolinar v. State*, 155 S.W. 3d 184, 186 (Tex. Crim. App. 2005). [7]

**(C) Fifth Amendment right to be free from compelled self-incrimination**

It is well-settled that the Fifth Amendment insulates probationers from compelled self-incrimination. *Dansby v. State*, 398 S.W.3d 233, 239-40 citing Minnesota *v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed. 409 (1984). *See also Chapman v. State*, 115 S.W.3d 1, 5-6 (Tex.Crim.App. 2003). "Supreme Court decisions have 'made clear' that a state may not constitutionally carry out a threat to

---

[6] In *Gagnon v. Scarpelli*, the Supreme Court enunciated the minimum requirements of due process which must be observed in community supervision revocation hearings:
> (1) written notice of the claimed violations of probation
> (2) disclosure of probationer of the evidence against him
> (3) opportunity to be heard in person and to present witnesses and evidence, and the right to confront and cross-examined adverse witnesses;
> (4) a neutral and detached hearing body; and
> (5) a written statement by the fact finders as to the evidence relied on and the reasons for revoking probation. *Gagnon,* 411 U.S. 778, 786 (1973).

[7] The determination of an adjudication of guilt is reviewable in the same manner as that used to determine whether sufficient evidence supported the trial court's decision to revoke community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.12 § 5(b). A plea of true, standing alone, is sufficient to support the revocation of community supervision and adjudicate guilt. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980).

revoke probation for the legitimate exercise of the Fifth Amendment privilege."

*Murphy*, at 438.

> While a probationer may be compelled to appear and give testimony about matters relevant to his probationary status, he cannot be "required. . . to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent. . . [I]t bears emphasis that a State may validly insist on answers to even incriminating questions and hence sensibly administer it's probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminate a threat of incrimination. The privilege against self-incrimination must be claimed, "unless he invokes the privilege, shows a realistic threat of self-incrimination and nevertheless is required to answer, no violation of his right against self-incrimination is suffered."

*Murphy*, at 427-28.    The court in *Dansby* held that the appellant could not be expelled from the treatment program apart from his claim of Fifth Amendment privilege, "[w]ithout immunity, he simply may not be forced to confess to criminal behavior in any context, whether during a polygraph examination or group therapy." The court reversed the judgment of the court of appeals and remanded the cause for further appellate consideration consistent with it's opinion. *Id*. At 242.

In Texas, the existence and results of a polygraph examination are inadmissable for all purposes. *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990). But the courts have recognized that "this is an evidentiary rule and does not preclude the use of such tests fro investigative purposes. *Ex parte Renfro*, 999 S.W.2d 557, 561 (1999).

14

**(D) Interrogation**

The *Miranda* rule prohibits the admission into evidence of statements made in response to custodial interrogation when the suspect has not been advised of certain warnings  (including that the suspect has the right to remain silent and a right to counsel.).  *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.1602 (1966).  In the *Miranda* context, "interrogation" means "any words or actions on the part of the police. . . that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 , 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) 1980).  "This "should know" test is the general test for determining whether interrogation occurs." *Alford v. State*, 358 S.W.3d 646, 661 (Tex. Crim. App. 2012). "This test focuses primarily upon the  <u>perceptions of the suspect,</u> rather than the intent of the police." *Innis*, 446 U.S. at 301.  (*Emphases added).*

*Miranda* warnings are not necessary prior to the administration of a polygraph examination "when subject to a polygraph examination as an investigative tool alone, a probationer is not placed in any worse position than he would otherwise be where there no polygraph examination." *Ex parte Renfro,* at 561.  While private citizens ordinarily are not regarded as law enforcement officers, "a citizen who acts as an agent of law enforcement and interrogates a person in custody, however, is bound by

all constitutional and statutory confession rules, including *Miranda* and Article 38.22. *Hailey v. State*, 413 S.W.3d 457, 474 (Tex. App.– Fort Worth 2012, pet ref'd).

Based on the record, it is fair to assume that the appellant believed that he had no choice but to honestly answer and participate in all of the polygraph tests and questions that Mr. Russell asked of him because refusing to answer and participate in the questioning, would be violate the terms of his deferred adjudication resulting in adjudication and a lengthy prison sentence. Even the state polygraph examiner, Mr. Russell, who worked primarily with the probation department for the past eleven years, stated that this was his understanding. (RR 26-27).

The "should know" test is the general test for determining whether interrogation occurs." *Alford*, at 661. "This test focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301. Recently, the Court of Criminal Appeals in *Cruz*, held that the officers should have known, and *did know* that by asking the appellee's name and phone number, (without providing *Miranda* warnings) did not fall under the "booking exception"[8] to the *Miranda* rule (the information later enabled the police to locate and search appellee's home and cell-phone records, resulting in his arrest for murder) and that

---

[8]"'A question falls within the "booking" exception if, under an objective standard, "the question reasonably relates to a legitimate administrative concern.'" *Alford*, at 659-60.

16

the response to those questions had incriminating value in themselves and did not simply lead to other incriminating evidence. *State of Texas v. Cruz*, No. PD-0082-14 at 13-14, 2015 WL 2236982 (Tex. Crim. App. 2015) (published May 13, 2015.). Looking at the subjective point of view of the suspect, rather than the objective view of the police is what the test focuses on to determine if interrogation occurs.

It is fair to assume that the appellant believed that any type of refusal to answer the polygraph examiner's questions would put him in a position where he had no other choice but to answer these questions. *Miranda* warnings were not given, nor was he informed that he had the right to assert his Fifth Amendment Right against self-incrimination. Here the answers to the questions were not "used merely as an investigative tool" but were used as direct evidence that the appellant had violated the terms and conditions of his probation and resulted in his adjudication and 25 year prison sentence.

Believing that he was not free to leave and that he was compelled to answer for fear of automatically being adjudicated guilty and going to prison, Mr. Russell should have known and *did know* that the appellant's responses to those questions had incriminating value, in themselves, and did not simply lead to other incriminating evidence like the officers in *Cruz*, who obtained the appellant's phone number and name which led to his arrest for murder. *Cruz*, at 13-14.

Based on the testimony of the witnesses, it is fair to assume that the appellant would not have plead true to any of the allegations in the State's Motion to Adjudicate Guilt <u>but for</u> his understanding that the results of all of the statements, including the pre-polygraph interview and questionnaire which were taken in violation of his rights against self-incrimination and in violation of his *Miranda* rights, would come into evidence against him.

Reversible error is presented.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, PREMISES CONSIDERED, for the foregoing reasons, appellant respectfully prays that this Honorable Court vacate the sentence and remand the case with instructions to conduct a new adjudication proceeding.

Respectfully submitted,

/s/AllisonSecrest_____
**ALLISON SECREST**
State Bar No. 24054622
ALLISON SECREST, P.C.
808 Travis Street, 24th Floor
Houston, Texas 77002
(713) 222-1212
(713) 650-1602 (FAX)

Attorney in Charge for Appellant,
**ASTIN CHAVERS CLARK**

19

# CERTIFICATE OF COMPLIANCE

I hereby certify that Appellant's computer-generated Legal Memorandum and Brief contains 4,168 words (relying on the word count of the computer program) and is in compliance with the sections covered by Texas Rule of Appellate Procedure 9.4., including 9.4(i)(1).

/s/AllisonSecrest
**ALLISON SECREST**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief for Appellant has been furnished to Mr. Alan Curry, Chief of the Appellate Division, District Attorney's Office, 1201 Franklin, Suite 600, Houston, Texas, 77002, on this 13th day of July, 2015.

/s/AllisonSecrest
**ALLISON SECREST**