**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00171-CR**
_____

**JAVANTE JORDAN STOKER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 19-32845**

**MEMORANDUM OPINION**

Following a trial, a jury convicted Javante Jordan Stoker of aggravated robbery. In three issues, Stoker argues his conviction should be reversed because the evidence is insufficient to support his conviction, the trial court erred in admitting a body camera recording of statements the victim made within an hour of the robbery into evidence, and the trial court erred by admitting into evidence the investigating detective's testimony about what the victim told him about the robbery during the

1

investigation conducted by the police. As discussed below, we affirm the trial court's judgment.

## BACKGROUND

On August 7, 2019, the Beaumont Police Department responded to a shooting outside the Waffle House. When officers arrived on the scene, there were no witnesses who could provide information about the shooting. Officer Trey Billingsley hoped to gather information from the shooting victim—James—who was transported to a nearby hospital by his cousin, Sean.[1]

When Officer Billingsley arrived at the hospital, James was lying in a hospital bed suffering from a gunshot wound to the leg. At the time, he was "in pain" and "still in shock." James provided Officer Billingsley with information about the shooting, and their conversation was captured on Officer Billingsley's body camera. James told the officer that he and others were gambling with dice outside the Waffle House when a man exhibited a firearm and took his money. When James turned to run, someone shot him.

The following day, Detective Timothy Spikes visited James at the hospital, and James provided the detective with a written statement. James told the detective

---

[1]To protect the privacy of the complaining witness named in the indictment, we refer to the victim and his cousin by using pseudonyms. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

that he and Sean were having dinner with friends at the Waffle House when they all gathered outside to gamble with dice. James explained that the man who shot him lost money and left with two others, and all three returned with firearms. One man pointed a firearm at James, took his money, and shot James in the leg.

During their conversation, Detective Spikes showed James a photo lineup depicting six different men, including Stoker. James identified Stoker as the man who shot him. Detective Spikes then spoke with Sean whose statement corroborated James's statement. When Detective Spikes showed Sean the photo lineup, Sean also identified Stoker as the man who shot James.

A grand jury indicted Stoker for aggravated robbery. Stoker pleaded not guilty, and the case proceeded to trial. Five witnesses testified, including James, Sean, Officer Billingsley, and Detective Spikes. James and Sean were reluctant witnesses, and they appeared and testified after the trial court issued writs of attachment ordering them to do so. The record demonstrates disparities between their trial testimony and the out-of-court statements they made to police.

For instance, at trial, James testified he gave Stoker his money voluntarily and did not know who shot him. Still, at trial he also testified he was gambling outside the Waffle House with a group of people when, at some point, Stoker left the group and came back with a firearm, and then Stoker pointed the firearm at him and took

3

his money. At trial, James told the jury he made a mistake when he identified Stoker as the perpetrator in the photo lineup.

James and Sean admitted giving Detective Spikes written statements following the incident, but they denied "remembering" most of what they said. Therefore, the prosecutor offered the body camera footage of Officer Billingsley's conversation with James in the hospital into evidence during the trial. Stoker objected, arguing that James's statements to the officer were hearsay. The trial court found James's statements to be exited utterances, and admitted the body camera footage over Stoker's objection.

The prosecutor also elicited testimony from Detective Spikes about James's written statement during the trial, and Stoker objected to the detective testifying about the statements, arguing they were inadmissible hearsay. The trial court found that, based on demeanor and appearance, James remembered certain things he told police although he testified that he did not. Relying on the hearsay exceptions in Rule 804, the trial court admitted Detective Spikes's testimony about what James's said in his statement that James claimed he couldn't remember.

Detective Spikes testified before the jury about what James reported to the police about the robbery-turned-shooting. Detective Spikes further testified that James and Sean identified Stoker in photo lineups as the person who shot James and signed forms stating they were "100% sure." The trial court admitted the signed

4

forms into evidence without objection. The jury convicted Stoker of aggravated robbery.

## ANALYSIS

Stoker appeals his conviction arguing it should be reversed for three reasons: (1) the evidence is legally insufficient to identify him as the person who committed the offense, (2) the trial court erred in admitting Officer Billingsley's body camera footage, and (3) the trial court erred in admitting Detective Spikes's testimony about James's out-of-court statements.

### Sufficiency of the Evidence

Every criminal conviction must be supported by legally sufficient evidence as to each element of the offense that the State must prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). To determine whether that standard has been met, we consider all the evidence in the light most favorable to the verdict, and we decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson*, 443 U.S. at 319).

In our review, we resolve evidentiary inconsistencies in favor of the verdict, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker v. State,* 594 S.W.3d 330,

335 (Tex. Crim. App. 2020); *see* Tex. Code Crim. Proc. Ann. art. 38.04. The evidence supporting a criminal conviction may be direct or circumstantial, and juries may draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Therefore, each fact need not directly point to the guilt of the defendant, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Walker*, 594 S.W.3d at 335.

In issue one, Stoker argues insufficient evidence supports his conviction for aggravated robbery. A person commits aggravated robbery if while committing theft—and with intent to obtain or maintain control of the property—he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death by using or exhibiting a deadly weapon. *See* Tex. Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2).[2]

During trial, James identified Stoker as the man who pointed a firearm at him while taking his money. James also testified that after Stoker pointed the firearm at him, he turned to run away when someone shot him. Detective Spikes testified James identified Stoker as the man who shot him with 100 percent certainty, and that testimony is corroborated by the photo lineup form that James signed after identifying Stoker as the person who shot him.

---

[2]A person commits theft if "he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03.

Although James also testified he gave Stoker the money voluntarily, the jury as the fact-finder could have reasonably rejected that part of his testimony. The jury also heard evidence that Stoker received the money while pointing a firearm at James, and a firearm is a deadly weapon per se. *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005). The evidence also showed that James tried to run away when Stoker pointed the firearm at him, so the jury could have believed James's testimony that he was unsure who shot him yet still inferred that Stoker received the money after intentionally or knowingly threatening or placing James in fear of imminent bodily injury or death by using or exhibiting a deadly weapon. *See* Tex. Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2); *see also Dorough v. State*, 639 S.W.2d 479, 480 (Tex. Crim. App. 1982) (explaining that imminent threat of death or serious bodily injury was sufficiently shown by evidence that the defendant held a gun to the victim's head). Therefore, the jury could have also reasonably inferred that James could not have given Stoker the money voluntarily while he was under an imminent fear of being injured or killed. We conclude the evidence is sufficient to support Stoker's conviction for aggravated robbery. We overrule issue one.

## Evidentiary Issues

Next, we address Stoker's evidentiary issues. An appellate court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). An abuse of

7

discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

In issue two, Stoker argues the trial court erred in admitting Officer Billingsley's body camera footage because James's statements in the footage were hearsay and not admissible as an excited utterance. Hearsay is a statement, other than one made by the declarant while testifying at a trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is generally inadmissible in evidence, but there are several exceptions to the hearsay rule, including one for excited utterances. *Id.* at 802, 803(2).

For the excited-utterance exception to apply: (1) the exciting event must be startling enough to evoke a truly spontaneous reaction from the declarant, (2) the reaction to the startling event must be quick enough to avoid the possibility of fabrication, and (3) the resulting statement should be sufficiently related to the startling event to ensure the reliability and trustworthiness of that statement. *McCarty v. State*, 257 S.W.3d 238, 241–42 (Tex. Crim. App. 2008). In determining whether a statement is an excited utterance, courts consider the length of time between the occurrence and the statement, the nature of the declarant, whether the statement was made in response to a question, and whether the statement was self-

8

serving. *Apolinar v. State*, 155 S.W.3d 184, 187 (Tex. Crim. App. 2005) (citations omitted).

The trial court held a hearing before admitting Officer Billingsley's body camera footage. The footage reveals Officer Billingsley's conversation with James occurred about 35 minutes after the shooting while James was lying in a bed in a hospital. Officer Billingsley testified James appeared to be "hurting" and "still in pain" from the gunshot wound. According to Officer Billingsley, James was "coherent," but he was "still in shock," he was "all over the place[]" and James would not let go of a nurse's hand. Officer Billingsley's testimony is consistent with James's demeanor, as seen in the body-cam footage.

A thirty-minute delay between the shooting and the statements in the footage arguably weighs against their admissibility as excited utterances. However, the primary factor in a court's decision on whether the excited-utterance exception applies is whether the declarant when making the utterance was still dominated by the emotions, excitement, fear, or pain of the event. *Apolinar*, 155 S.W.3d at 186. Before admitting the footage, the trial court found James made the statements while "still dominated by the emotions, excitement, fear and certainly the pain" of having been robbed and shot in the leg. The trial court also found James had no "meaningful opportunity to reflect" between the period the shooting occurred and when he made the statements about it to Officer Billingsley. Considering the officer's testimony,

and the actual footage, we cannot say the trial court abused its discretion in finding the excited-utterance exception applied to the statements.

Additionally, when a trial court admits evidence in violation of evidentiary rules, the admission is a non-constitutional error warranting reversal only if the error affected the defendant's "substantial rights." *Gonzalez*, 544 S.W.3d at 373; *see* Tex. R. App. P. 44.2(b). A substantial right is affected if an error has a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373. A substantial right is not affected if, after examining the record as a whole, we have fair assurance that the evidentiary error did not influence the jury or had but a slight affect. *Id.* In determining whether an error affected the defendant's "substantial rights," we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error. *Id.*

Even if we assumed the trial court erred in admitting the footage, the error would not warrant reversal. The facts depicted in the footage were also proven by other evidence admitted by the trial court without objection. *See Valle v. State*, 109 S.W.3d 500, 509-10 (Tex. Crim. App. 2003) (explaining that error in admission of evidence is cured where same evidence is admitted elsewhere without objection). For instance, in the trial, like in the footage, James stated a man exhibited a firearm

10

and took his money, the only difference being that, in the trial, James identified the man as Stoker. For that reason, we have a fair assurance that, even if the trial court erred in admitting the footage, the error did not affect Stoker's substantial rights. *See Gonzalez*, 544 S.W.3d at 373.

In issue three, Stoker argues the trial court erred in admitting Detective Spikes's testimony about James's written statement. During the trial, James admitted providing Detective Spikes with a written statement about the circumstances surrounding the shooting. Nevertheless, James testified he did not remember most of what he told the detective. For that reason, the State sought to elicit testimony from Detective Spikes to prove what James said in his written statement. Stoker objected and argued that the detective's testimony about the statement's content would be inadmissible hearsay.

The trial court held a hearing and decided to admit Detective Spikes's testimony about James's statement under Rule 804. Under the Rule, a declarant's former testimony offered in a criminal trial is excluded from the hearsay rule if: (1) "the declarant is unavailable as a witness," (2) the declarant gave the testimony "as a witness at a trial or hearing of the current or a different proceeding[,]" and (3) the testimony "is now offered against a party who had an opportunity and similar motive to develop it by direct, cross-, or redirect examination[.]" Tex. R. Evid. 804(b)(1)(B).

11

A declarant is "unavailable as a witness" if the declarant "testifies to not remembering the subject matter[.]" *Id.* at 804(a)(3).

The trial court found, based on his demeanor in the trial, James remembered things about his statement that he testified he did not. Therefore, the trial court found James to be an unavailable witness and admitted Detective Spikes's testimony about the statement under Rule 804. *See id.* at 804(b)(1)(B). James's written statement does not qualify as "former testimony" under Rule 804, however, because the statement was made at a hospital, not at a trial or hearing against a party who had an opportunity and similar motive to develop it by direct, cross, or redirect examination. *See id.*; *see also, e.g., Bee v. State*, 974 S.W.2d 184, 188 (Tex. App.—San Antonio 1998, no pet.) (holding a declarant's prior written statement to police during a criminal investigation was not admissible under Rule 804 as former testimony, even though the declarant was unavailable as a witness). Accordingly, the trial court erred in admitting the testimony about James's written statement under Rule 804.

Although the trial court erred in admitting the testimony, we have fair assurance the error did not affect Stoker's substantial rights. *See Gonzalez*, 544 S.W.3d at 373. The facts proven from Detective Spikes's testimony about James's written statement were also proven by other evidence admitted by the trial court without objection. *See Valle*, 109 S.W.3d at 509–10. For instance, James testified Stoker pointed the firearm at him while taking his money, and James identified

12

Stoker as the perpetrator in the photo lineup form admitted in evidence. Therefore, the error in admitting the testimony about James's written statement does not warrant reversal. We overrule issues two and three. Having overruled all of Stoker's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on November 4, 2022
Opinion Delivered August 23, 2023
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.